*In re* V.P., a minor (The People of the State of Illinois, Petitioner-Appellee, v. V.P., Respondent-Appellant).

Second District   No. 85—0261

Opinion filed December 11, 1985.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones-Stewart,

Solicitor General, and Joan G. Fickinger and Mark L. Rotert, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE STROUSE delivered the opinion of the court:

The defendant, V.P., appeals directly from the revocation of his probation and commitment to the Department of Corrections based on a finding that he violated the terms of an earlier probation order by committing the offense of aggravated battery in violation of section 12—4(b)(6) of the Criminal Code of 1961 (Act) (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(6)).

There is no dispute about the facts in this case. V.P. was originally adjudicated a delinquent minor on November 22, 1982. He was placed on probation which was extended on a number of occasions. A supplemental petition to revoke his probation was filed on November 20, 1984, alleging three statutory violations of aggravated battery in regard to an incident involving Kevin Paulsen. V.P. was alleged to have choked and scratched Paulsen "[k]nowing Kevin Paulsen to be a correctional institution employee engaged in the execution of his official duties."

Paulsen was a group worker at the Du Page County Youth Home (Home) and was in the dining room on the morning in question. He asked V.P. not to talk so loudly, whereupon V.P. responded using obscene language. Two other staff persons tried to escort V.P. from the dining hall when he committed various batteries against Paulsen.

Paulsen's job as a group worker entailed supervision of the boys and girls residing in the Home, monitoring their behavior and daily activities, enforcing discipline, and conducting intakes and releases. He described the Home as a "secure facility" with locks on the doors controlling traffic, to secure custody of the residents, but no employee wore a military-type uniform. The Home itself was owned by the county of Du Page, and Paulsen's salary was paid by the county also.

Pursuant to the Juvenile Court Act, the goals of the Home are not punitive. (Ill. Rev. Stat. 1983, ch. 37, par. 701—2.) The facility's procedural manual does not refer to the Home as a "Correctional Center," and its operational goal is to provide a safe and secure temporary detention center in a nonpunitive setting.

V.P.'s only contention on appeal is that a group worker at a county youth detention home is not a correctional institution employee as contemplated under the Act in which he was charged. Pursuant to the Act, one who commits a battery against a correctional institution employee while that employee is engaged in the execution of

his official duties shall be found to have committed an aggravated battery. Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(6).

The parties agree that under the Act the term "correctional institution employee" is not defined. However, V.P. argues that a definition contained within the Unified Code of Corrections is controlling. It states: " 'Correctional Institution or Facility' means any building or part of a building where committed persons are kept in a secured manner." (Ill. Rev. Stat. 1983, ch. 38, par. 1003—1—2(d).) V.P. further argues that "Committed Person" is defined as "a person committed to the Department," and "Department" is defined as the Illinois Department of Corrections. (Ill. Rev. Stat. 1983, ch. 38, pars. 1003—1—2(c), (e).) V.P. then contends that, in reading the Unified Code of Corrections and the Criminal Code of 1961 together, section 12—4(b)(6) of the Act (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(6)) is intended to protect employees of the Illinois Department of Corrections, not employees of county facilities, especially those that are not punitive.

The State, in response, argues that the statute in question has been held to address a certain category of risk, such as group workers at a youth detention home, rather than addressing specific employees with specific job titles. The State cites *People v. Tripp* (1978), 61 Ill. App. 3d 507, in reliance upon this contention. Tripp was a prison inmate who struck Smith, a civil service supply supervisor. Smith's duties consisted of enforcing and maintaining "disciplinary, safety, sanitary, security and custodial measures." (61 Ill. App. 3d 507, 509.) The court, in holding that Smith was a correctional officer, stated:

> "In enacting the statute in question, the legislature generally intended to afford greater protection for those subjected to special risks in performing public duties. [Citation.] From the plain language of the provision we understand 'correctional officer' to be a generic appellation defined by the official duties of the victim in question. A civil service classification of a particular job cannot limit the intent of the legislature; the decisive factor is whether that job entails functions which the statute was intended to protect." 61 Ill. App. 3d 507, 510-11.

Tripp urged on appeal that it was significant that Smith did not wear a uniform, did not carry a gun and was not assigned a paramilitary rank similar to institutional guards. However, the court stated that it is the nature of official duties performed and not the "clothing of the actor which is dispositive." And, in the performance of his duties, Smith was subjected to the inherent risks in a correctional facility which the statute was designed to cover and prevent. The court also found that it was significant that the attack was itself the result

of Smith's attempt to enforce discipline in the execution of his duties. *People v. Tripp* (1978), 61 Ill. App. 3d 507, 511.

We agree with the holding in *Tripp* and extend the court's underlying analysis to cover the factual situation of this case. It is evident that the statute is intended to afford greater protection to those subjected to special risks in performing public duties. We note that the Act itself extends protection not only for correctional institution employees, but also for teachers and school employees (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(3)); park district employees (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(4)); public aid employees (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(5)); peace officers (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(6))); government-employed firemen, paramedic and ambulance drivers or medical assistants (Ill. Rev. Stat. 1983, ch. 38, par., 12—4(b)(7)); persons employed by transportation systems or occupying or using transportational facilities (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(9)); and judges acting in their official capacity (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(11)).

The Illinois Supreme Court considered a similar argument under section 9—1(b)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(2)). That section provides: that a defendant, who has been found guilty of murder, may be sentenced to death if "the murdered individual was an employee of an institution or facility of the Department of Corrections, or any similar local correctional agency, killed in the course of performing his official duties." The defendant contended that it applied only to institutions of the Department of Corrections and not the Du Page County jail. (*People v. Devin* (1982), 93 Ill. 2d 326, 340.) The court held that the legislature, in enacting the statute, was aware that commitments of convicted felons would be made to a sheriff and that under those circumstances a prisoner in a county jail would be an inmate of a "similar local correctional agency" within the meaning of the Act. 93 Ill. 2d 326, 341.

Here, too, it is apparent that the legislature, in enacting the statute, was aware that commitments would be made to those who are subjected to special risks in performing public duties. Moreover, if the legislature had wished to limit the statute to the employees of the Department of Corrections it would have used the term "institution of the Department of Corrections."

We also hold that the Du Page County Youth Home is a correctional institution within the meaning of the Act. In so holding, we find that since the term correctional institution is not defined in the Act, a consideration of the ordinary meaning of the words will, therefore, be helpful. Although the Home is general educational and refor-

mative rather than penal, and other facilities such as an industrial school or a reform school, like detention homes, are not penal, they have been defined as correctional institutions because their inmates are restrained of liberty. See 60 Am. Jur. 2d *Penal & Correctional Institutions* sec. 1 (1972).

Further, although the Home is not formally termed a "correctional institution," it is functionally equivalent to one. For example, the Home must be "conducted and staffed in accordance with minimum standards established by the Department of Corrections." (Ill. Rev. Stat. 1983, ch. 23, par. 2682.1.) In addition, like other correctional institutions, the Home must provide temporary care of alleged or adjudged delinquents who require secure custody and physically restricting facilities for their own or for the community's protection. Ill Rev. Stat. 1983, ch. 23, par. 2681.1(b).

We find that V.P.'s reliance on the definitions in the Unified Code of Corrections is misplaced because the commentary notes to that chapter specify that the definitions are not applicable to any law except chapter III (Ill. Rev. Stat. 1983, ch. 38, par. 1003—1—1 *et seq.*) of the Unified Code of Corrections. (Ill. Ann. Stat., ch. 38, par. 1003—1—2, Council Commentary, at 13 (Smith-Hurd 1983).) Furthermore, the attempt to analogize these definitions to this case is incongruent when the statute is considered with its plain meaning and the legislature's intent to afford greater protection to those subjected to special risks in performing public duties in such correctional institutions as the Home.

Accordingly, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.