*In re* T.A.B., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. T.A.B., Respondent-Appellant).

Second District   No. 2—87—1006

Opinion filed April 14, 1989.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Richard L. Salon, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Respondent, T.A.B., appeals from an order of the circuit court of Du Page County adjudicating him a delinquent minor. On appeal, respondent makes the following contentions: (1) that the State failed to present sufficient evidence to establish the requisite mental state for the offense of criminal damage to property; (2) that the State failed to

prove beyond a reasonable doubt that respondent violated section 4—103(a) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)) by possessing a motor vehicle which he knew had been stolen or converted; (3) that section 4—103(a) of the Code is unconstitutional; and (4) that the restitution amount ordered by the court was excessive in light of defendant's financial circumstances. Because we agree that the State failed to prove beyond a reasonable doubt that respondent committed the above offenses, we deem it unnecessary to consider the other issues raised by respondent on appeal. We reverse and remand.

The second amended delinquency petition charged respondent with driving without a license or permit (Ill. Rev. Stat. 1987, ch. 95½, par. 6—101), and respondent entered an admission to this charge. The petition also charged respondent with violating section 4—103(a) of the Code and with two offenses of criminal damage to property (Ill. Rev. Stat. 1987, ch. 38, par. 21—1(a)). The hearing on the petition was held on April 20, 1987.

At the hearing, John Breivigan testified that he was respondent's foster father. On April 6, 1987, respondent drove Breivigan's Datsun 280 ZX automobile without permission. Breivigan was on vacation in Florida at the time. When Breivigan returned home, he found that the car had been damaged beyond repair. He valued the car at $9,800. Respondent had lived with Breivigan about six to seven months at the time.

Robert Hiebert testified that at approximately 8:15 on the morning of April 6, 1987, he was waiting to make a left turn at the intersection of Clarendon Hills Road and 67th Street. While his car was stopped near the intersection, Hiebert looked in his rearview mirror and saw a white car approaching him from behind on Clarendon Hills Road. The car was going very fast. Hiebert thought that the white car was going to hit his car. Hiebert heard a screech from the other car's brakes as the car swerved. Instead of hitting him directly from behind, as Hiebert had feared, the white car clipped his right rear bumper, went through the intersection, and hit a telephone pole on the side of the road. The two occupants of the white car then got out of the car and hugged each other. Hiebert identified respondent as the driver of the white car.

Hiebert had an estimate performed on his car after the accident which showed that approximately $1,800 in repairs would be necessary. According to Hiebert, the white car would have hit his car directly from behind if respondent had not attempted to go around him.

Jay Elmahassni, a classmate of respondent, testified that respond-

ent picked him up at school at about 8 a.m. on the morning of April 6, 1987. Respondent went to Elmahassni's classroom, threw up the car keys, and said, "Jay, I've got the Datsun." Jay got into the car with respondent. Respondent was driving around 70 miles per hour down Clarendon Hills Road before the accident. When respondent saw Hiebert's car, he attempted to shift gears in order to slow down but was unable to do so. Respondent then hit the brakes and the tires locked. According to Elmahassni, the back of the Datsun then hit the back of Hiebert's car. The Datsun then swerved into a telephone pole. Elmahassni stated that respondent took the car because he just wanted to drive around.

Officer Gerald Piccoli of the Darien police department was dispatched to the scene to investigate the accident. Piccoli testified that in his opinion respondent tried to avoid colliding with the Hiebert car.

The trial court ordered that respondent be adjudicated a delinquent minor. Respondent's post-trial motion was denied. The trial court ordered respondent to serve a five-year term of probation and to pay $8,793.99 in restitution. Respondent, who earned about $60 per week, was ordered to pay half his earnings until the $8,793.99 restitutionary sum had been satisfied. Respondent filed a timely notice of appeal.

In a juvenile proceeding, the State must prove beyond a reasonable doubt that respondent committed the charged offense. (*In re Thompson* (1980), 79 Ill. 2d 262, 267-68, 402 N.E.2d 609, 612.) Respondent contends that the State failed to prove that he was guilty beyond a reasonable doubt of criminal damage to property because it failed to establish the requisite mental state. Respondent was charged with violating section 21—1(a), which states that a person is guilty of criminal damage to property if he or she "[k]nowingly damages any property of another without his consent." (Ill. Rev. Stat. 1987, ch. 38, par. 21—1(a).) Respondent asserts that the evidence did not establish that he knowingly damaged his foster father's car or the Hiebert car.

If an offense is defined in terms of a particular result, a person acts knowingly if he is "consciously aware" that his conduct is "practically certain" to cause the result. (Ill. Rev. Stat. 1987, ch. 38, par. 4—5(b); *People v. Herr* (1980), 87 Ill. App. 3d 819, 821, 409 N.E.2d 442, 445.) The offense of criminal damage to property is defined in terms of the result of the accused's conduct, which is damage to the property of another. Furthermore, as the court pointed out in *Herr*, knowledge involves an awareness of the harm that will result from a person's act while negligence involves the failure to be aware of such results in a situation in which the person has a legal duty of

awareness. *Herr*, 87 Ill. App. 3d at 822, 409 N.E.2d at 445.

■ Even though the evidence indicates that respondent was driving at a highly excessive rate of speed, it cannot be said that he was consciously aware that he was practically certain to damage the two automobiles in question as a result. It is clear from the evidence that respondent did not deliberately damage either car since he did swerve in an attempt to avoid colliding with Hiebert's car. While traveling 70 miles per hour on a street with a speed limit of 35 miles per hour would substantially increase one's chance of becoming involved in an accident, it would not make such an occurrence a practical certainty. Respondent's conduct may have been negligent or even reckless. The evidence fails to demonstrate, however, that defendant knowingly damaged either of the vehicles.

The State argues that respondent's intentional act of wrongfully taking the car is sufficient evidence of intent. The two cases cited by the State in support of this proposition, *People v. McEwen* (1987), 157 Ill. App. 3d 222, 510 N.E.2d 74, and *People v. Hickman* (1973), 9 Ill. App. 3d 33, 291 N.E.2d 523, are both distinguishable from the present case. In *McEwen*, the court upheld the felony murder conviction of a defendant who claimed his gun accidentally discharged during the perpetration of an armed robbery. We note that under section 9—1(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(3)), the intent to kill or do great bodily harm is not an element of felony murder. By contrast, as we have seen, knowledge is an element of the offense of criminal damage to property.

In *Hickman*, defendant fired a bullet at his brother which struck his former wife instead. The court relied upon the doctrine of transferred intent in sustaining defendant's conviction for aggravated battery, stating that defendant's intent to harm his brother was sufficient to support the conviction, even though the bullet hit his ex-wife. (9 Ill. App. 3d at 44, 291 N.E.2d at 527.) The transferred intent doctrine might be applicable if respondent had intended to collide with Hiebert's car and damage it but collided with another car instead. In *Hickman*, defendant had the requisite mental state for the offense of which he was convicted, but harmed someone other than the person he intended to harm when he fired the shot. In the case at bar, there was no evidence that defendant ever had the requisite mental state for the offense of criminal damage to property. The trial court's finding that he was guilty on two charges of this offense must therefore be reversed.

Respondent was also charged with violating section 4—103(a)(1) of the Code, which makes it unlawful for "[a] person not entitled to the

possession of a vehicle or essential part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted." (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1).) While respondent and the State address the issue of whether respondent converted the Breivigan car, we take note that the second amended delinquency petition alleges that respondent violated section 4—103(a)(1) by possessing the car in question "knowing it to have been stolen from Jacqueline Barnes and John Breidigan [sic]." In *People v. Bivens* (1987), 156 Ill. App. 3d 222, 509 N.E.2d 640, defendant was charged by means of indictment of violating section 4—103(a). As in the case at bar, the charge in *Bivens* was limited to possession of a stolen vehicle rather than possession of a converted vehicle. The court concluded that, under these circumstances, the State had to prove knowledge on defendant's part that the vehicle was stolen. 156 Ill. App. 3d at 230, 509 N.E.2d at 646.

Stolen property is statutorily defined as "property over which control has been obtained by theft." (Ill. Rev. Stat. 1987, ch. 38, par. 15—6.) Here, as in *Bivens*, it is clear from the evidence that the party accused of violating section 4—103(a) was the one who had taken the owner's car without permission. Under these circumstances, the *Bivens* court concluded that the State was obliged to prove that defendant knowingly exerted control over the car in such a manner as to permanently deprive the owner of its use, or, in effect, prove that defendant committed theft (Ill. Rev. Stat. 1987, ch. 38, par. 16—1). *Bivens*, 156 Ill. App. 3d at 230, 509 N.E.2d at 646.

In the case at bar, the State failed to prove that respondent committed a theft. The evidence merely reveals that respondent took his foster father's car without permission and drove it around the area in which he resided for awhile. Such joyriding escapades are not considered thefts. (See *People v. Woods* (1974), 17 Ill. App. 3d 835, 838, 308 N.E.2d 856, 859.) There is simply no evidence that respondent intended to permanently deprive his foster father of the use or benefit of the car. Although respondent did damage the car beyond repair in the accident, we have already held that the State failed to prove this was a knowing or intentional act.

Since the State failed to prove that respondent possessed the car knowing it to have been stolen, as charged in the delinquency petition, the trial court's finding that respondent violated section 4—103(a) of the Code must be reversed. Because of our holding, we need not address respondent's contention that section 4—103(a) is unconstitutional, although we note that this court recently rejected this contention in *People v. Larson* (1987), 158 Ill. App. 3d 135, 511 N.E.2d

191. We also need not address respondent's argument that the restitutionary amount set in the dispositional order was excessive, as we vacate the dispositional order and remand for a new dispositional hearing with regard to the charge to which respondent entered an admission, driving without a license.

The judgment of the circuit court of Du Page County is reversed and the cause remanded for a new dispositional hearing.

Reversed and remanded.

UNVERZAGT, P.J., and McLAREN, J., concur.