THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RONALD FINKE, Defendant-Appellant.

Second District   No. 2—89—0778

Opinion filed October 24, 1990.—Rehearing denied November 28, 1990.

Anderson, Deitsch & Associates, P.C., of Wheaton (Robert J. Anderson, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Ronald Finke, was charged with the offenses of driving with a breath-alcohol concentration of .10 or more (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)), driving under the influence of alcohol (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)), and making an improper right turn (Ill. Rev. Stat. 1987, ch. 95½, par. 11—801). After a jury trial, defendant was found not guilty of driving with a breath-alcohol concentration of .10 or more and guilty of both driving under the influence of alcohol and making an improper right turn. He

was sentenced to one-year probation, 80 hours of public service, and was assessed $500 in costs. Defendant appeals, raising the following issues: (1) whether the trial court erred in failing either to sustain defendant's objection or to grant a motion for mistrial when the State violated the trial court's order granting a defense motion *in limine*; (2) whether the trial court abused its discretion in failing to give the jury defendant's tendered instruction on prior inconsistent statements; (3) whether the trial court abused its discretion by sustaining the State's objection to defendant's testimony on redirect as to why he was driven home, rather than driving himself, after he left the police station; (4) whether defendant's right to a fair trial was violated by cumulative errors; and (5) whether the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of driving while under the influence of alcohol. We reverse and remand for a new trial.

Prior to the commencement of defendant's jury trial, a motion *in limine* was filed by defendant wherein he requested, *inter alia*, that the State's witnesses be directed to make no reference of any type to defendant's exercise of his fifth amendment right to refuse to answer questions asked after his arrest. A hearing was held on the motion on February 3, 1988, and the trial court granted the motion.

A jury was then selected, and the presentation of evidence commenced on February 4, 1988. The first witness to testify was Officer Mary F. Cabrera, on behalf of the State. She testified that she is an officer for the Downers Grove police department. While on duty on January 3, 1987, at approximately 12:16 a.m., she was in the intersection of Ogden Avenue and Main Street, facing westbound on Ogden, waiting to make a left-hand turn onto southbound Main. At that time, Cabrera observed a gray vehicle, traveling eastbound on Ogden, making an exceptionally wide right turn onto Main Street crossing the center double lines and entering the turn lane for oncoming traffic on Main Street. Cabrera testified that in making the turn, the gray vehicle almost struck another vehicle that was stopped at a red light on Main Street and was positioned on the inside lane of the two lanes of northbound traffic for Main Street. Cabrera stated that she saw the expression of the driver in the other car and that the expression on her face was that she thought she was going to be hit. The turning vehicle then swerved back into the southbound lanes of traffic.

Cabrera testified that she then made her turn onto Main Street. She put her red lights on and initiated a traffic stop about three quarters of a block past the intersection. Cabrera stated that she exited her vehicle and approached the driver of the stopped vehicle, who was defendant. She asked defendant for his driver's license, which he pro-

duced. Cabrera testified that at that time she smelled a strong odor of alcohol on defendant's breath and his eyes were extremely bloodshot. Cabrera indicated that while defendant spoke very little during the stop, saying basically yes or no, she noticed that his speech was slurred. She stated that she asked defendant to step out of his vehicle to perform field sobriety tests. When defendant walked to the rear of his car, Cabrera noticed that he was unsure of his balance, was swaying and stumbling. Cabrera testified that the area where defendant was walking was asphalt, that it had snowed a few days prior to the arrest, but the snow had been plowed. She explained that the street had been salted, leaving it part wet and part dry.

Cabrera stated that, when defendant reached the rear of the car, she asked him to perform a heel-to-toe test. She testified that she described the test and performed it for defendant. Cabrera explained that the test consisted of taking five steps touching the heel to the toe; on the fifth step, defendant was to pivot, turn around, and walk five steps back, again, heel to toe. Defendant indicated that he understood and then attempted to perform the test. Officer Cabrera stated that as defendant attempted to take the test, he merely walked forward in a staggering motion, never walking heel to toe. Cabrera estimated that defendant took five or six steps and then just stood there and stared at her without saying anything.

Cabrera testified that she then asked defendant to perform a finger-to-nose test, which she also described and demonstrated for him. Cabrera stated that when she asked defendant if he was ready to start and informed him that he could begin, defendant just stood there and made no attempt to perform the test. Cabrera opined that defendant was intoxicated and testified that she then placed defendant under arrest and took him to the police station. Cabrera stated that she was present when defendant was tested on a breathalyzer machine.

Thereafter, at 1:18 a.m., Cabrera read defendant his *Miranda* warnings, which he indicated he understood. Cabrera testified that she then asked defendant questions from an alcohol-influence report. The prosecuting attorney then questioned Cabrera:

> "Q. Did you have occasion to ask the defendant whether or not he was operating a vehicle?
> A. Yes, I did.
> Q. What was his reply?
> A. 'No comment.' "

Counsel for defendant then objected and asked to be heard. A conference was held in chambers outside the presence of the jury. The trial

court determined that a preliminary hearing should be held to determine whether defendant did indeed invoke his fifth amendment privilege. At the conclusion of the hearing in chambers, the trial court denied the motion for mistrial. The court held that defendant's "no comment" answer would stand; however, the court ruled that no other questions in regard to defendant's exercise of his fifth amendment right would be allowed.

The trial then resumed with Officer Cabrera returning to the stand. On cross-examination, Cabrera testified that she had prepared several reports about the arrest which she had read to refresh her recollection prior to testifying. She estimated that the right turn she observed defendant make onto Main Street took three seconds. She testified that within that time she also observed the face of the driver that was heading north on Main Street; however, Cabrera made no attempt subsequently to locate this driver.

Cabrera testified that, although the roadway that night was part wet and part dry due to snow, it was dry on the asphalt pavement where the field tests were given. Counsel for defendant then showed Cabrera the uniform citation and complaint which she issued for the improper right turn, wherein she had checked that the road conditions were wet. Cabrera explained that "[t]he road was partially wet and partially dry. The road was basically wet. Where I tried to test I looked for a dry spot and that's where I did the test."

Cabrera testified that after observing defendant make the improper turn, she turned her lights on and started calling in the stop at 12:16 a.m. Cabrera stated that approximately two minutes had elapsed from the time she called in the stop and the time defendant was placed under arrest at about 12:18 a.m. Within that time, defendant was asked to perform the two field tests. Counsel for defendant asked Cabrera questions about a supplemental report which was prepared after defendant was released. The report indicated that defendant was asked to perform "field sobriety test," singular, not plural, and it did not indicate which test defendant was asked to perform. Cabrera explained, "I might have forgotten an s."

On the alcohol influence report form, Cabrera had indicated what observations she made about defendant's balance and his walking during the walk-and-turn test, but she made no indication of the finger-to-nose test. On re-cross-examination, the following colloquy occurred:

"Q. [Defense counsel]: In terms of the observations in regard to the walk-and-turn test, the observation that you marked on the alcoholic influence report form, it is true, is it not, Officer, that you checked on this alcoholic influence report that the

turning test was not made?

A. [Cabrera]: That's right. He did not turn.

Q. Officer, you also checked, did you not, that a coin test was not made, is that correct?

A. That's right.

Q. Officer, you did not ask him to perform a coin test, did you?

A. No, I did not.

Q. So you made the same entry for the coin test that you didn't ask him to do as you did for the turning test which you did ask him to do; is that correct?

A. That's correct."

The only other witness to testify on behalf of the State was Officer Shields, who is a certified breathalyzer operator. When asked whether he had an opinion as to whether defendant was under the influence of alcohol at the time in question, Shields indicated that he did have such an opinion, but the defense counsel objected based on lack of foundation. The trial judge stated, "I think your objection may be premature. I will allow him to lay a foundation if indeed he can, Counsel." Shields then testified that he was present in the same room with defendant for approximately 30 minutes and was a width of a table away from defendant. Officer Shields was not asked again his opinion regarding whether defendant was intoxicated. Thereafter, the State rested, and the defense moved for a directed finding, which was denied.

The first witness to be called by the defense was Edward Steffan, who is 35 years old and a friend of defendant's for 20 years. Steffan is a rehabilitation counselor who deals with a large number of people that become dependent on drugs and alcohol after being injured either on their jobs or in automobile accidents. Steffan testified that on January 2, 1987, he had attended a party at Tom Sheppy's home, arriving at about 7:45 p.m. Defendant also attended the same party, arriving at approximately 9:30 p.m. They watched a football game on television with defendant sitting on the couch next to Steffan until around midnight. Steffan testified that during that time he observed defendant drink a little over two beers; Steffan himself had nothing alcoholic to drink that evening.

As defendant was leaving the party, at approximately midnight, Steffan had an opportunity to observe him and testified that defendant had no difficulty walking, talking, or understanding people. Steffan opined that defendant was not under the influence of alcohol when he left the party. Steffan explained that in 1968 defendant had

been in an accident and was thrown through the windshield of a car. Steffan testified that as a result, defendant has a large scar on his forehead and has a dryness problem with his eyes, which makes them almost always bloodshot.

Next, the defense called Tom Sheppy as a witness. Sheppy testified that he too was 35 years old and had known defendant for 20 years. Sheppy's testimony was substantially similar to that given by Edward Steffan. Sheppy testified that he had a party with about 13 or 14 people in attendance, including defendant. Sheppy stated that he served three big submarine sandwiches and potato chips at the party and that defendant had "quite a bit of one of the sandwiches." Sheppy remembered defendant leaving at approximately midnight. At that time, Sheppy observed defendant walk, talk, and speak; Sheppy opined that defendant was not under the influence of alcohol. On cross-examination, Sheppy admitted that he, himself, had consumed approximately five beers that evening. He did not see defendant drink any beer, but he saw beer sitting in front of defendant on the table. Sheppy testified that he did not know how much defendant had to drink that night.

The next witness to testify on behalf of the defense was Richard Vaughan, defendant's brother-in-law. Vaughan is employed as a detective sergeant with the Du Page County sheriff's department assigned to the crime laboratory as a forensic scientist supervisor. Vaughan testified that he received a call from defendant on January 3, 1987, at approximately 12:45 a.m. Vaughan stated that he had no difficulty understanding defendant and that defendant sounded normal. Vaughan testified that he evaluated and assessed defendant's speech and advised defendant to take the breathalyzer test. Vaughan went to the Downers Grove police department at approximately 2 a.m. At that time, he personally observed defendant walk to Vaughan's car. Defendant got into Vaughan's car, and the two drove away. Vaughan testified that defendant did not appear to have any difficulty walking, and Vaughan had no difficulty understanding him. Vaughan opined that defendant was not under the influence when they spoke over the phone at 12:45 a.m. or when he saw him at 2 a.m.

Next, defendant testified on his own behalf. He testified that he was 36 years old, 6 feet 2 inches tall, and weighed approximately 203 pounds at the time in question. He testified that on January 2, 1987, he had a cold and was taking medicine for it. He stated that he had half a grapefruit for breakfast, no lunch, played racquetball for over an hour, and ate dinner at approximately 6:30 p.m. Dinner consisted of a steak, a salad, a baked potato, corn, and a dinner roll. Along with

dinner, he consumed two glasses of white wine.

Defendant then went to Tom Sheppy's home, arriving between 9:30 and 9:45 p.m. He testified that he watched a football game with Ed Steffan. He ate about four or five inches of a submarine sandwich and other snacks at the party. Defendant testified that he drank two beers and part of a third.

Defendant explained that as a result of a 1968 car accident, he has a problem with his eyes being dry and consequently red. Defendant stated that he had severe lacerations of the forehead and middle scalp and had to have plastic reconstructive surgery from his forehead to the top of his head and also ranging down from his eyes.

Defendant testified that he left Sheppy's at approximately midnight. At that time he had no difficulty walking or talking and opined that he was not under the influence of alcohol. Defendant stated that when he left Sheppy's it was cold, overcast, and misting. He testified that when he approached the intersection of Ogden Avenue and Main Street, he was in the right-hand lane heading east on Ogden. He stated that he stopped at the traffic signal. His right-turn signal was engaged as he made the turn. He testified that, in turning, a portion of his left front bumper went into the left-hand lane of southbound Main Street. After making the turn, defendant saw Officer Cabrera in his rearview mirror with her lights activated. Defendant testified that he pulled his car into the right-hand lane and curbed it about a half or three quarters of a block from the intersection. Officer Cabrera approached defendant's car and asked for his driver's license, which he produced without any difficulty. Cabrera asked defendant to step out of the car, which he did without any difficulty. He was asked to step between the rear of his car and the front of Cabrera's car onto the sidewalk out of the way of traffic. Defendant stated that the roadway was wet and it was still misting. Cabrera asked defendant to perform a field-sobriety test, and he agreed. Defendant testified that Cabrera demonstrated the finger-to-nose test and asked him to perform it. Defendant testified that he did perform it and he felt he did fine. Defendant was then taken back to Cabrera's car and placed under arrest at about 12:18 a.m.

Defendant testified that from the police station he called Rick Vaughan and talked with him for approximately 10 minutes. Thereafter, defendant agreed to take the breathalyzer. Vaughan subsequently came to the police station and picked defendant up at around 2 a.m. Defendant testified that he accompanied Vaughan in his vehicle back to defendant's home.

On cross-examination, defendant testified that in making the right

turn, he did not cross the double yellow line on Main Street. He claimed that he performed the finger-to-nose test, that Officer Cabrera never described or demonstrated the heel-to-toe test, and he did not take it. When asked whether the police gave defendant his car keys upon being released, defendant said he could not remember, but he thought they had. Defendant testified that he knew his car had been moved to a vicinity around where he was stopped. Defendant then admitted that when he left he had his keys and Vaughan drove him home.

On redirect examination, defendant was asked the reason why Rick Vaughan drove him home. The State objected, and the objection was sustained. A discussion on this issue occurred outside the presence of the jury but was on the record. The judge ruled that the fact that defendant did not drive himself home was not impeaching testimony and, thus, such testimony could not be rehabilitated. The judge stated that any inference created by the testimony is a question of fact for the jury.

Thereafter, defendant resumed testifying. Defendant stated that at the time he left the police station, he felt fine, other than being nervous, and opined that he was not intoxicated.

The jury returned verdicts finding defendant not guilty of the offense of driving while under the influence of alcohol with a breath concentration of .10% or more; guilty of the offense of driving under the influence of alcohol; and guilty of the offense of improper right turn at an intersection. Defendant's post-trial motion was denied, and he was sentenced to one year's probation, 80 hours of public service, and was fined $500. Defendant timely appeals.

On appeal, defendant first argues that the State violated the *in limine* order when it elicited testimony that defendant exercised his fifth amendment right to remain silent. Specifically, defendant argues that the following questioning by the State of Officer Cabrera was improper:

"Q. Did you have occasion to ask the defendant whether or not he was operating a vehicle?

A. Yes, I did.

Q. What was his reply?

A. 'No comment.' "

Defendant maintains that after this exchange occurred the trial court erred in failing either to sustain defendant's objection or to grant a motion for mistrial. We agree.

When the objection was raised at trial as to the above questioning, the trial judge determined that a preliminary hearing should be

held to decide whether defendant invoked his fifth amendment privilege. At the hearing, Cabrera testified on direct examination that, after the "no comment" reply, she asked defendant the next question on the alcohol-influence report form. Counsel then questioned her as to whether she asked defendant where he was going, to which she responded that she had, and his reply was "home." Cabrera testified that she asked defendant what direction he was traveling, to which he replied "going eastbound Roosevelt Road." Counsel for the State told the judge that after that question he had intended to quit so as not to violate the *in limine* order. Cabrera explained that after asking defendant that question, defendant informed her that he was not going to answer any more questions.

On cross-examination, Cabrera again testified that, after the "no comment" response, she asked defendant where he was going and he said "home." After being shown a copy of the alcohol-influence report, she remembered that the next question she asked defendant was "what street or highway were you on" to which he responded, "I am not going to say anything at this point." Cabrera proceeded to ask him the next question which was "what direction of travel were you proceeding," and defendant told her he was going eastbound on Roosevelt Road. Cabrera then asked defendant from where did he start, and he, again, informed her that he was going to refuse to answer any more questions.

Defendant then testified on his own behalf at the hearing in chambers. He claimed that he was in the squad car prior to receiving his *Miranda* warnings when Officer Cabrera asked him where he was heading and what road he was on and that it was then when he answered "home" and "Roosevelt Road." He testified that later when Cabrera asked him if he was operating a vehicle he had responded, "I have no comment until I talk to an attorney." When Cabrera then asked him where he was going, defendant claims he again made the same response.

■■ ■ The trial judge then denied the motion for a mistrial and held that defendant's "no comment" answer would stand in the absence of any invocation of defendant's sixth amendment right to counsel; however, the court ruled that no other questions in regard to defendant's exercise of his fifth amendment right would be allowed. We find this ruling to be in error. In *Miranda v. Arizona* (1966), 384 U.S. 436, 468 n.37, 16 L. Ed. 2d 694, 720 n.37, 86 S. Ct. 1602, 1624 n.37, the Supreme Court stated:

> "[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custo-

dial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

Under *Miranda*, it is clear that defendant's fifth amendment privilege may be evoked either by standing mute or by the use of some verbal response. The *Miranda* warnings do not advise defendant of the exact words he must use in order to invoke this privilege. We find that by responding "no comment," defendant in the case at bar did sufficiently invoke his right to remain silent in accordance with *Miranda*. We reject the State's argument that by voluntarily answering subsequent questions defendant thereby chose not to exercise his right to remain silent. (*People v. Pittman* (1973), 55 Ill. 2d 39, 56; *People v. Burbank* (1972), 53 Ill. 2d 261, 266; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 1022.) Defendant's subsequent responses, whether voluntary or not, are immaterial as they would not permit introduction to the jury of the fact that defendant initially exercised his right to remain silent. Defendant's attorney timely objected to the introduction of this inadmissible evidence, and the court, consistent with its prior ruling on the motion *in limine*, should have sustained the objection and advised the jury to disregard the answer. The court's failure to do so was prejudicial to defendant and deprived him of a fair trial. Thus, we reverse the trial court's judgment and remand for a new trial.

Because remaining issues raised by defendant may surface again on retrial, we will address them now for the sake of judicial economy.

Defendant contends that the trial court abused its discretion in failing to give the jury the defense-tendered jury instruction regarding prior inconsistent statements. The instruction tendered incorporated Illinois Pattern Jury Instruction, Criminal, No. 3.11 (2d ed. 1981) and provided:

"The believability of a witness may be challenged by evidence that on some former occasion he or she made a statement that was not consistent with his or her testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom."

At the instructions conference, defense counsel argued that the instruction was proper since Officer Cabrera had been impeached with prior inconsistent statements. The trial judge refused the instruction, stating "[i]t is my recollection of the testimony—and I took very careful notes with respect to Officer Cabrera—that there was no actual impeachment by means of either omission or by means of the transcript from the summary suspension hearing."

Defendant argues that the trial judge incorrectly focused on whether there was or was not impeachment based on the transcript from the earlier summary suspension hearing. He maintains that Cabrera's testimony was substantially impeached by inconsistencies in the written documents she prepared on the date of the arrest. Specifically, defendant contends that the traffic ticket which Cabrera prepared on the date of the arrest differed from her testimony at trial in that on the ticket she said that the pavement was wet, while at the trial she testified it was dry. In addition, the supplemental police report indicated that she asked defendant to perform "field sobriety test"; at trial she testified that she asked defendant to perform two field sobriety tests. Further, the alcohol-influence report form which Cabrera filled out on the date of the arrest was blank in the area of the finger-to-nose test, yet she testified that she asked defendant to perform the test.

■ The function of jury instructions is to convey to the jury the appropriate principles of law, so that it may apply the correct legal principles to the facts of the case and arrive at the proper conclusion according to the law and evidence. (*People v. Mitchell* (1975), 27 Ill. App. 3d 117, 121.) The pattern jury instruction regarding inconsistent statements is appropriately given only where two statements are inconsistent on a material matter. (*People v. Thomas* (1988), 172 Ill. App. 3d 172, 177.) Materiality exists where the contradiction reasonably tends to discredit the testimony of the witness on a material matter (*Thomas*, 172 Ill. App. 3d at 177), and this determination lies within the discretion of the trial court. *People v. Villa* (1981), 93 Ill. App. 3d 196, 202.

■ A review of Cabrera's testimony indicates that the inconsistencies of which defendant complained did not constitute a material contradiction. We do not find the moisture of the pavement to be material in the case at bar; however, Cabrera did explain the inconsistency stating that the pavement itself was wet but where defendant performed the tests was dry. In addition, Cabrera explained that, while she did ask defendant to perform two field sobriety tests, the supplemental police report only indicated one, and she must have therefore forgotten to add the "s" on to the word "test." This explanation is consistent with the alcohol-influence report form and Cabrera's testimony wherein she explained that while she asked defendant to perform both the heel-to-toe test and the finger-to-nose test, he did not perform the finger-to-nose test, and therefore it was left blank on the alcohol-influence report form. Under the circumstances, we find that the instruction covering impeachment by prior inconsistent

statements was not warranted here. See *Thomas*, 172 Ill. App. 3d at 178.

■ Next, defendant contends that the trial court abused its discretion by sustaining the State's objection to defendant's testimony on redirect as to why he was driven home, rather than driving himself, after he left the police station. Defendant argues that he was impeached by prior inconsistent conduct; namely, his conduct in not driving his car home was inconsistent with the defense theory of the case because it created the inference that he did not drive due to his intoxicated condition. We disagree. First, as noted by the State, it was the defense who brought out on direct examination that defendant did not drive himself home; thus the testimony elicited on cross-examination in this regard did not contradict or impeach defendant's prior testimony, making rehabilitation unnecessary. Further, even if error had been committed, we would find such error to be harmless, given that immediately after the objection had been sustained, defendant testified that he felt fine at the time he left the police station, other than being nervous, and opined that he was not intoxicated. Thus, in essence, defense counsel ultimately received the rehabilitating answer that he was apparently seeking. See *People v. Orange* (1988), 121 Ill. 2d 364, 376-77.

■ Finally, defendant contends that the evidence adduced at trial was insufficient to prove him guilty beyond a reasonable doubt of driving while under the influence of alcohol. When an appellate court reverses a criminal conviction and remands the cause for a new trial and defendant has contended that the evidence at trial was insufficient, the reviewing court must consider defendant's claim or else risk subjecting defendant to double jeopardy. (*People v. Taylor* (1979), 76 Ill. 2d 289, 309.) In support of his contention that the evidence was insufficient, defendant argues that he and three defense witnesses testified that he was not under the influence of alcohol on the date of the arrest. The only witness to render an opinion that defendant was under the influence of alcohol was the arresting officer, Mary Cabrera, whose testimony defendant maintains was substantially impeached and incredible.

■ ■ We note that defendant's intoxication is a question of fact for the jury to decide. A conviction of driving under the influence of alcohol may be sustained based solely on the testimony of the arresting officer, if credible. (*People v. Janik* (1989), 127 Ill. 2d 390, 402.) The credibility of the witnesses and the weight of the evidence are for the trier of fact to assess. (*Janik*, 127 Ill. 2d at 401.) In the case at bar, defendant admittedly consumed alcohol on the evening in ques-

tion. Officer Cabrera stopped defendant for making a wide right turn. Cabrera testified that she smelled alcohol on defendant's breath, that defendant's eyes were bloodshot, that his speech was slurred, and that defendant swayed and was unsure of his balance and walk. Cabrera stated that defendant simply would not perform the finger-to-nose test, and she opined that he was intoxicated. Though there was a conflict in the evidence, we find that the evidence presented by the State, if believed by the jury, was sufficient to support the conclusion that defendant was guilty beyond a reasonable doubt of driving while under the influence of alcohol. This finding does not constitute in any way an implication as to defendant's guilt or innocence which would be binding on retrial and is intended only to protect defendant from the risk of being subjected to double jeopardy.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

WOODWARD and GEIGER, JJ., concur.