THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY D. COZART, Defendant-Appellant.

Second District   No. 2—90—1213

Opinion filed October 8, 1992.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Jerry D. Cozart, appeals from his conviction of possession of a stolen motor vehicle (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1)). He contends on appeal that (1) he was not proved guilty beyond a reasonable doubt, and (2) the trial court erred when it refused to instruct the jury on the essential elements of the offense of theft.

On May 8, 1990, the defendant was charged with possession of a stolen motor vehicle. The indictment charged:

"On or about March 23, 1990, Jerry D. Cozart committed the offense of unlawful possession of a stolen motor vehicle, a Class 2 felony, in violation of Chapter 95½, Section 4—103(a)(1), of the Illinois Revised Statutes, as amended, in that the defendant, being a person not entitled to the possession of a 1984 Ford, VIN number 1FABP0143EW17879, possessed said vehicle knowing it to have been stolen."

The defendant pled not guilty and proceeded to a jury trial. At trial, Darla Walker testified that in March 1990 she lived in Elgin and she owned a 1984 Ford Escort. Late on March 22, 1990, Darla went to a tavern called Lee's or Douglas Tap in Elgin. Darla and her girlfriend, Freddie Mae, had been drinking prior to the stop. Darla had drunk approximately 24 beers since 2 p.m. that day. When she left the tavern, she backed her car into a brick wall near the parking lot of the tavern. It was at this point that the defendant, known only by his first name to Darla, entered Darla's car and proceeded to drive it. According to Darla, the defendant may have decided to drive when he saw her hit the wall.

Darla testified that the defendant drove to Hanover Park, a town with which Darla was not familiar. Defendant pulled into an apartment complex parking lot and told Darla to get out of the car. When Darla refused, defendant hit her in the eye with his open hand. Darla exited the car. Defendant drove away with Darla's purse still in the car.

About 1:30 a.m., March 23, Darla placed a call to the Hanover Park police from a pay telephone in a tavern parking lot. Officer Tim-

othy Podlin responded to a dispatch and travelled to the tavern parking lot after the telephone call was traced to that location. Podlin described Darla as "obviously intoxicated" and testified that she was clumsy, slow, somewhat confused and incoherent. Darla was unable to give the officer her address, but did make a telephone call to her aunt to get a ride home. Darla never told him that the man driving her car had hit her. However, Darla did relate that she could not get home, that she had been in an accident, that a man had gotten into the car with her and driven her to Hanover Park and then left her there, and that she was lost. Podlin testified that he knew that Darla's car had been taken, but could not tell from her statements whether it was against her will.

Police officer John Demmin stopped defendant, who was driving Darla's car at about 1 a.m. on March 23, 1990. The stop took place about one block from Douglas Tap. The defendant was arrested, and, during an inventory search, Darla Walker's purse was found.

About 3:30 a.m., police contacted Darla Walker about her car. She arranged to go to the police station in the morning. There, she talked with Detective Barnes of the Elgin police department. Darla did not appear intoxicated. According to Barnes, Darla did not relate that she told the defendant to get out of the car, but she did say that the defendant told her to get out and struck her on the face. Neither Officer Podlin nor Detective Barnes noticed any bruises on Darla's face.

In both opening and closing arguments, the defense presented a theory that the defendant took the car, but did not intend to permanently deprive Darla Walker of the car. In support of that assertion, the defense pointed to the fact that the defendant took the car back to the area where he and Darla had first met, an area near a bar which the defendant frequented. The defense further asserted Darla's lack of credibility given her extreme state of intoxication at the time of the alleged crime and pointed out that it was implausible that the defendant would steal a car from someone who could identify him.

We will first address defendant's contention that the trial court erred in refusing three instructions offered by the defendant. The first read:

> "In order to find Jerry Cozart guilty of Unlawful Possession of a Stolen Motor Vehicle, you must find that the State has proven beyond a reasonable doubt the following two propositions.
>
> First: Jerry Cozart exerted unauthorized control over the motor vehicle of Darla Walker, and

Second: Jerry Cozart intended or knowingly exerted control of the motor vehicle in such a manner as to permanently deprive Darla Walker of its use and benefit."

The second instruction read:

"The phrase 'exerts control' includes, but is not limited to, the taking of or possession of property."

The third instruction read:

"The phrase 'permanently deprive' means to

1. defeat all recovery of the property by the owner;

or

2. deprive the owner permanently of the beneficial use of the property;

or

3. retain the property with intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return;

or

4. sell, give, pledge, or otherwise transfer any interest in the property or subject it to the claim of a person other than the owner."

The trial court refused these instructions on the ground that the issue of intent to deprive permanently was not involved in a charge of possession of a stolen motor vehicle. The judge questioned whether there was an instruction to define the word "stolen," but added that the definition of "stolen property" (Ill. Rev. Stat. 1989, ch. 38, par. 15—6) would only confuse the jurors by adding the issue of whether a theft occurred. That section defines "stolen property" in terms of its use in the Criminal Code. " '[S]tolen property' means property over which control has been obtained by theft." Ill. Rev. Stat. 1989, ch. 38, par. 15—6.

■ The offense of possession of a stolen motor vehicle requires that the State prove that the defendant possessed a vehicle; that he was not entitled to possession of the vehicle; and that the defendant knew that the vehicle was stolen. (Illinois Pattern Jury Instructions, Criminal, No. 23.15 (2d ed. 1981) (hereinafter IPI Criminal 2d).) The defense in this case was based on a theory that the evidence only showed that the defendant took the car, but that either the car was taken with the permission of the driver or, at worst, that the defendant took the car for a joyride. Therefore, the defendant argues that, under the facts of this case where it was the defendant who took the car, in order for the jury to find that he possessed the car knowing it

to have been stolen, the jury would first have to find that in fact the defendant had stolen the car.

■ A person may be charged with possession of a stolen motor vehicle even if he is the one who has stolen it. In such a case, defendant would have to know he had stolen the vehicle, that is, he would have to have stolen it before he could be found guilty. (*People v. Cramer* (1981), 85 Ill. 2d 92, 100.) In *Cramer*, the defendant was charged with theft of a truck. The defendant admitted he drove the truck, but there was some evidence presented that he intended to return the truck. On appeal, he argued that he was entitled to an instruction on possession of a stolen motor vehicle as a lesser included offense of theft. The court rejected this argument and held that the instruction was properly refused, reasoning that the word "stolen" in the charge of possession of a stolen motor vehicle referred to a "theft" and therefore facts on which a jury could find him guilty of possession of a stolen motor vehicle were the same facts as necessary to convict him of theft.

In *People v. Bivens* (1987), 156 Ill. App. 3d 222, 230, the court considered an argument that a defendant who had been convicted of possession of a stolen motor vehicle had not been proved guilty beyond a reasonable doubt. The court held that the evidence was insufficient to prove beyond a reasonable doubt that defendant exerted control of the car with the intent to or knowledge that his actions would permanently deprive the owner of its use and benefit. *Bivens*, 156 Ill. App. 3d at 231.

In another case cited by defendant, *In re T.A.B.* (1989), 181 Ill. App. 3d 581, the juvenile was accused of possession of a stolen motor vehicle, in violation of section 4—103(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)), and on appeal from an adjudication of delinquency he argued that he had not been proved guilty beyond a reasonable doubt. Relying on the statutory definition of "stolen property" (Ill. Rev. Stat. 1987, ch. 38, par. 15—6), this court held that where the evidence showed that it was the person charged who had taken the owner's car, the State is obliged to prove that the defendant knowingly exerted control over the car in such a manner as to permanently deprive the owner of its use, or, in effect, to prove the defendant committed the theft. This court concluded that the evidence supported a finding that the juvenile was involved in a joyriding escapade, but not a theft. *T.A.B.*, 181 Ill. App. 3d at 586.

■ The facts here indicate that the defendant was the person who took Darla Walker's car. Accordingly, the State would have to prove that the defendant knowingly exerted control over the car in

such a manner as to permanently deprive Darla Walker of the use of her car. (*T.A.B.*, 181 Ill. App. 3d at 586.) We hold that under the facts of this case, where the State was required to prove intent to permanently deprive the owner of the use of her car and where the defendant submitted instructions defining theft and the phrases used therein, including "permanently deprive," the court erred in refusing to allow these instructions to be given to the jury.

The State has cited the case of *People v. Bradley* (1989), 192 Ill. App. 3d 387, a case in which the defendant was convicted of possession of a stolen motor vehicle. On appeal, the defendant argued that the jury should have been instructed on intent to permanently deprive the owner of the car's use and benefit. The court found the issue waived for the defendant's failure to tender the instruction. (*Bradley*, 192 Ill. App. 3d at 393.) However, the court went on to consider the merits and indicated that not only was there no suggestion in the Illinois Pattern Jury Instructions that an additional definition was needed, but the word "stolen" implies that the perpetrator of the crime intended to permanently deprive the owner of its use and benefit. Therefore, the court concluded that no further instructions were needed to inform the jury that they must consider whether there was an intent to permanently deprive. *Bradley*, 192 Ill. App. 3d at 393-94.

*Bradley* is distinguishable from this case, and we decline to follow it to the extent that it suggests that the jury need never be instructed on intent to permanently deprive. First, *Bradley* was decided on a waiver basis, and further discussion regarding the merits of the case was, presumably, due to the court's consideration of whether plain error occurred. Thus, the issue in *Bradley* was whether the failure to instruct the jury as to the intent to permanently deprive denied the defendant a fair trial. The facts in *Bradley* include that the owner of the car did not know the defendant or where he lived; and the defendant was still using the car three days after it was reported stolen. Within the context of these facts, the court concluded that no plain error occurred. On the other hand, here the defendant did not waive the issue. Defendant tendered instructions on theft and definitions of "exerts control" and "permanently deprive," but the court refused to allow the instructions to be given to the jury.

Second, to the extent that the *Bradley* court addressed the merits of the issue and found that "stolen" implies an intent to permanently deprive, the *Bradley* court relied on *People v. Johnson* (1981), 98 Ill. App. 3d 228, and *People v. Browry* (1972), 8 Ill. App.

3d 599. In *Johnson*, the court held that it was not error for the court to fail *sua sponte* to instruct the jury on theft in a burglary conviction. The court relied on a waiver theory and rejected an argument of plain error because the court in *Browry* (8 Ill. App. 3d at 604) held that "theft" is a simple word of common usage not needing a definition in a burglary prosecution. The *Johnson* court also noted that the Committee Notes to the burglary instruction (IPI Criminal No. 14.05) do not require the intended felony or theft to be defined by instruction. *Johnson*, 98 Ill. App. 3d at 234-35.

In this regard, we note that the Committee Notes to the burglary instruction now recommend that a definition of the offense of theft or other specified felony be given if requested by either party or *sua sponte*. (IPI Criminal 2d No. 14.06, Committee Note.) Also, while the issue of intent to permanently deprive may not be a critical one in some cases, here there was evidence supporting a theory that defendant did not intend to permanently deprive the owner of her property.

In *People v. Washington* (1989), 184 Ill. App. 3d 703, this court held that the failure to instruct the jury that theft requires intent to permanently deprive was not error. In that case, the defendant had been charged with possession of a stolen vehicle, and the evidence showed that it was someone other than the defendant who took the car. The jury was instructed on "stolen property" as "property over which control has been obtained by theft." (IPI Criminal 2d No. 13.18.) The court specifically reasoned that intent to permanently deprive is not an element of the offense of possession of a stolen motor vehicle, and defendant's mental state in that regard was irrelevant under the facts of the case. However, the court noted that in some instances "conviction under section 4—103(a)(1) may be predicated upon possession by the same individual who allegedly committed the theft of the motor vehicle [citation] and, in such a case, proof of that person's mental state inconsistent with that required for theft would prevent a conviction under section 4—103(a) based on possession of a stolen motor vehicle." (*Washington*, 184 Ill. App. 3d at 708.) The conviction here is just such a case.

■ The sole function of jury instructions is to convey the correct principles of law applicable to the evidence submitted to the jury. Jury instructions enable the jury to apply the proper legal principles to the facts and arrive at a correct conclusion according to the law and the evidence. (*People v. Moya* (1988), 175 Ill. App. 3d 22, 25.) "[T]heft" is defined in the dictionary as "the felonious taking and removing of

personal property with intent to deprive the rightful owner of it" or "an unlawful taking." Webster's Ninth New Collegiate Dictionary 1222 (1990).

■ Common usage may imply a wrongful taking, but does not necessarily impart that the taking must be with the intent to permanently deprive the owner of the property. In view of the facts of this particular case, where there was ample evidence which might support a finding that defendant did not intend to permanently deprive the owner of her car, it was an abuse of discretion not to allow the jury to be instructed as to the elements of theft, including the intent to permanently deprive. A party is entitled to have the jury instructed on his theory of the case, and it is an abuse of discretion for the trial court to refuse to instruct the jury on the defendant's theory of the case if it has some foundation in the evidence. *People v. Swartz* (1989), 186 Ill. App. 3d 399, 401.

The State argues that the instructions were properly rejected because they were confusing. First, the State contends that the definition of "permanently deprive" was confusing because defendant failed to delete the subsections which were not applicable. The State cites no authority for this proposition. The instruction mirrors the language in IPI Criminal 2d No. 13.15, and we find it to be an accurate definition of the phrase.

The State also argues that the instructions were confusing because they introduced issues in theft and defined "permanently deprive" without tying those instructions to the charged offense. It is true that the first instruction offered by the defendant placed the definition of theft within the charge of possession of a stolen motor vehicle. The clearest manner in which to instruct the jurors would be to define "stolen property" as "property over which control has been obtained by theft" (Ill. Rev. Stat. 1989, ch. 38, par. 15—6), thereby introducing the notion that the property must have been taken by a theft. However, defendant cannot be faulted for not giving the definition of "stolen property" to tie the charge of possession of a stolen motor vehicle to the definition of theft since the court had already ruled that it would not allow such an instruction. After reading the definition of "stolen property," the court gave its opinion that such an instruction would not be appropriate because it would lead to a definition of "theft" when "theft" was not an issue. On remand, the court should allow instructions which include the definition of "stolen property," the issues for a charge of theft and the definitions applicable thereto.

■■ Having decided that we must reverse the judgment and remand this cause so that the jury can be instructed on issues pertinent to theft, we must consider the defendant's claim of insufficient evidence in order to avoid the risk of double jeopardy. *People v. Finke* (1990), 204 Ill. App. 3d 748, 760.

Defendant's challenge to the sufficiency of the evidence focuses on the fact that the owner of the car, Darla Walker, was so intoxicated that her story that the car had been taken from her by force was unbelievable. While there is evidence to indicate that Darla Walker was intoxicated and unable to relate coherently the entirety of what had occurred until the morning after the incident, there are also facts suggesting that the details she related at the time she first talked with police officers were consistent with her later story that she had been forced from her car. The question of credibility of a witness is best left for the jury. (*People v. Janik* (1989), 127 Ill. 2d 390, 402.) Moreover, there were facts which tended to support the State's theory that defendant had stolen the vehicle, including the fact that Walker's purse was found in the car when the defendant was stopped a few hours after Darla claimed she was forced from the car. The fact that the defendant returned to an area where he was known may be explained by the fact that defendant felt free to return to the area because he knew that Darla Walker was so intoxicated that it was likely that a substantial period of time would pass before she would report the theft to the police. Thus, the evidence was sufficient, if believed by the jury, to allow the jury to find that the defendant possessed a stolen motor vehicle.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

INGLIS, P.J., and McLAREN, J., concur.