# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Lattimore*, 2011 IL App (1st) 093238

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES LATTIMORE, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-09-3238 |
| Filed | September 2, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated battery arising from an incident in which he resisted a security guard who was detaining defendant for an alleged retail theft was affirmed where State proved defendant "knowingly" caused bodily harm to the guard and "struck" the guard "about the body" and that the guard was a "merchant" under section 12-4(b)(15) of the Criminal Code. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-21; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Rachel Moran, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J.Spellberg and Brian Hodes, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE R. GORDON delivered the judgment of the court, with opinion.
Presiding Justice Garcia and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1   Following a bench trial, defendant James Lattimore was convicted of aggravated battery and retail theft. 720 ILCS 5/12-4(b)(15), 16A-3(a), 16A-10(2) (West 2008). After a hearing on aggravation and mitigation, the trial court sentenced defendant to two years of mental health probation and assessed fines, fees, and costs in the amount of $555. Defendant filed a posttrial motion for a new trial, which was denied. On appeal, defendant challenges only the conviction for aggravated battery. Defendant argues, first, that the State failed to prove beyond a reasonable doubt (1) that defendant "knowingly" caused bodily harm to a security guard, (2) that defendant "struck" a security guard "about the body," and (3) that the security guard was a "merchant" pursuant to section 12-4(b)(15) of the Criminal Code of 1961. 720 ILCS 5/12-4(b)(15) (West 2008). For the following reasons, we affirm.

¶ 2   Second, defendant argues that the trial court erred by assessing certain fines, fees, and costs and failing to credit defendant for days served in presentence custody. For the following reasons, we order defendant's fines and fees reduced by $250 from $555 to $305, and order that his mittimus be corrected accordingly.

¶ 3                          I. BACKGROUND
¶ 4                          A. The Charges
¶ 5   The incident that resulted in the charges took place on November 25, 2008. On December 23, 2008, a grand jury indicted defendant for robbery, aggravated battery, and retail theft. The aggravated battery count charges that defendant:

> "in committing a battery, knowingly and without legal justification caused bodily harm to James Lee, to wit: struck James Lee about the body, knowing him to be a merchant, to wit: an employee of Family Dollar Store, who was detaining James Lattimore for an alleged commission of retail theft, in violation of." See 720 ILS

-2-

5/12-4(b)(15) (West 2008).

Since the retail theft count is not at issue in this appeal, we do not set it forth here.

¶ 6                                    B. Evidence At Trial

¶ 7        At a bench trial that commenced on September 14, 2009, the State called Tara Lynn Jones as a witness. Jones testified that she worked as a retail assistant manager for the Family Dollar Store on Laramie Avenue in Chicago, a retail mercantile establishment licensed to do business in the State of Illinois. At approximately 4:30 p.m. on November 25, 2008, she was standing in the front, inside of the store, when she observed defendant pick up some AXE deodorant body spray and then move toward the store exit. Jones alerted her boss, Marilyn Langford, who notified James Lee, a security guard.

¶ 8        Jones observed defendant as he passed the last cash register on his way to the exit without paying for any merchandise. Jones testified that she asked defendant to return the merchandise and defendant claimed "he didn't have anything." Jones was then joined by Langford, Lee, and other store personnel at the front of the store. Jones testified defendant then claimed that he "only had one," and gave them a single body-spray canister. Jones testified defendant said, "I ain't going to jail," and attempted to exit the store. Lee blocked defendant's path. Defendant then attempted "to push his way out the front door" as Lee and other store personnel struggled with defendant and brought him into the store's security office. Once inside the security office, defendant continued to struggle with Lee and other store personnel, and three more body-spray canisters fell out of his shirt. Jones testified that she took possession of the fallen canisters and called the police.

¶ 9        Jones testified that defendant then attempted to leave the security office "a couple of times," including running toward the front exit, back into the store toward the merchandise, and toward a back door located inside the security office. Jones was asked if anyone was injured during the time store personnel struggled with defendant. She testified:

> "JONES: I believe James Lee hurt his self trying to control or hold [defendant] down. He got yanked and hurt his shoulder. And I heard the gentleman–the defendant might have cut himself.
> COUNSEL: Okay.
> JONES: But Lee is the only one who I know for sure that got hurt."

By the time the police arrived, Lee and another Family Dollar Store employee forced defendant to the ground. Jones then printed a receipt for police indicating that the pretax retail price of each body spray was $4.50, for a total of $18.

¶ 10       The State played video recordings from the Family Dollar Store's security cameras for the trial court. Jones described the images displayed on the recordings as they were played. She testified that the store's security cameras face the cash registers and the front door on the inside of the store. There are no security cameras inside the security office or covering the area where the deodorant products are displayed. Jones testified that these recordings show defendant repeatedly attempting to leave the store and resisting store personnel.

¶ 11       On cross-examination, Jones admitted that she did not observe Lee become injured. She

testified that she learned of Lee's injury only when Lee described how he became injured following the "battling" between Lee and defendant.

¶ 12    The State then called James Lee as a witness on its behalf. Lee testified that, on November 25, 2008, he was employed by Metro One Security and was assigned to work at the Family Dollar Store on Laramie Avenue. Lee wore black uniform pants, a black jersey, and a hooded three-quarter length winter coat with the word "security" printed in large letters on the back of the coat and "Metro Loss Prevention" on the front breast.

¶ 13    Lee testified that at approximately 4:30 p.m. he heard someone calling his name from the front of the store. He then rushed to the front of the store and observed other Family Dollar Store employees speaking with defendant. He then blocked defendant from moving toward the front door "to prevent him from escaping." Lee testified that as defendant tried to move to the front door, "there was a little contact" between himself and defendant. He then attempted to restrain defendant by pushing him toward the door of the security office. Lee testified that defendant was "fighting" him. After a "tussle" and once he was assisted by other store personnel, Lee was able to force defendant into the security office. Lee testified that defendant would not stay in the security office and immediately left, and Lee "wrestle[d] him back towards the [security office] door." They continued to "wrestle" once he brought defendant back into the security office.

¶ 14    Lee testified that defendant said "I'm not going to jail," and attempted to leave through the security office's back door. Defendant's path to the back door was blocked by merchandise that had been stacked on top of platform carts used to transport merchandise, known as "U-boats." Lee testified that defendant was "damaging" the merchandise or "stock" by "bust[ing] right into it" in his attempt to maneuver to the back door. Lee was then asked if defendant "came into contact with" him during this encounter. Lee testified as follows:

> "LEE: Yes. It was contact when I grabbed him.
>
> COUNSEL: What kind of contact?
>
> LEE: I grabbed hold of his sweater to pull him out of the stock because he was damaging stock because he was damaging too much stock.
>
> COUNSEL: What happened when he did that–when you did that. I am sorry?
>
> LEE: I pulled him out and it was a U boat right there and he yanked from me and that threw me into the U Boat that was in front of me and it caused me to injure my right shoulder.
>
> COUNSEL: So did you hit the U boat based on the defendant's actions?
>
> LEE: Yes."

Lee testified he felt "excruciating pain" after his right shoulder struck the U-boat. Defendant continued to struggle with Lee, and other store personnel helped Lee subdue defendant on the security office floor.

¶ 15    On cross-examination, Lee admitted that he never went to the hospital or received medical treatment for his shoulder following this incident. Lee also admitted that he did not mention this injury in his incident report.

¶ 16    On redirect examination, Lee testified that the Family Dollar Store filed a complaint on

-4-

November 25, 2008, for battery and retail theft with the police, and the battery referred to the shoulder injury Lee sustained during the incident with defendant. Lee testified that the injury was not caused by Lee's grabbing defendant, but because of defendant's reaction to Lee's grabbing.

¶ 17    The State introduced the Family Dollar Store's security video recording from November 25, 2008, photographs of the merchandise found on defendant, the receipt created by Jones, and a certified statement of defendant's prior retail theft conviction on February 2, 2006, referred to as case number 05-C4-41377-01. These exhibits were offered into evidence without objection. The State then rested.

¶ 18    Defendant then moved for a directed finding of not guilty on the robbery and aggravated battery charges, but not on the retail theft charge. The trial court granted defendant's motion with respect to the robbery charge, since defendant did not take the property from Lee by use of force or by threatening the imminent use of force. With respect to the aggravated battery charge, defendant argued that the State presented testimony that Lee put "his hands on" defendant and then they fell, but failed to prove that defendant "stuck Mr. Lee about the body" in a manner consistent with the "battery that is charged" in the indictment. The trial court denied defendant's motion with respect to the aggravated battery charge.

¶ 19    Defendant exercised his right not to testify on his own behalf, called no witnesses, and rested. In defendant's closing argument, the defense argued that the State failed to prove that defendant had the intent to make physical contact with Lee. Defendant also argued that there was no "strike" as is specified in the indictment, but only a "yanking, falling down."

¶ 20    In the State's closing argument, the prosecution argued that defendant then "pull[ed]" Lee into the U-boat when Lee was injured. Defendant was "continually wrestling, tussling, throwing down merchandise, climbing over boxes, damaging merchandise to make good on [his] escape when security officers and store personnel had been trying to subdue" him for "several minutes." The State argued it was reasonable for defendant to know during this struggle that "someone can get injured," and by "yanking forward," defendant caused Lee to "strike" his shoulder. Although the State admitted that there was no testimony that defendant "in a conventional way took a fist and struck" Lee, the State argued that defendant's struggle with Lee caused Lee's injury and forced Lee's body against the U-boat. Specifically, the prosecution stated that defendant's "reaction to being grabbed *** caused Lee to fall into the U-Boat."

¶ 21    The trial court then found defendant guilty of aggravated battery and retail theft. The trial court noted that defendant was "charged with striking James Lee about the body which didn't actually happen," and explained its finding as follows:

"THE COURT: The defendant on three separate occasions attempted to, I guess you could say, resist the detention by the security guards and store personnel in a violent manner using force, attempting to leave the room, resisting, going into the room and how could he not know that there was a great risk that someone was going to get hurt.

Back and forth. Back and forth. And these three separate attempts to get away, he had to have known that somebody could get hurt, including himself. He could get

-5-

hurt himself because he was outnumbered with the police on the way.

I know that the charge, the indictment reads: Struck James Lee about the body. I believe he knew that James Lee was personnel from the store, an employee of Family Dollar, who again was being detained evidenced by his statement that he did not want to go back to jail, that indicates knowledge.

And in the course of his attempt to leave on, at least the third occasion when Lee tried to bring him in, he lurched forward, causing Lee to be struck about the body so he caused it."

¶ 22                             C. Posttrial Proceedings

¶ 23    On October 14, 2009, defendant filed a posttrial motion for a new trial arguing that the evidence failed to establish that defendant (1) "struck" Lee, as stated in the indictment, and (2) intentionally or knowingly caused bodily harm to Lee when defendant pulled Lee into the U-boat as they both fell. On November 5, 2009, the trial court heard arguments on defendant's motion and denied the motion, stating "I have rethought the issue, and I think I was correct in my initial assessment, and I will stand on my original ruling."

¶ 24    The trial court proceeded to sentencing and heard factors on aggravation and mitigation. The State argued that this was defendant's eleventh felony and that defendant had been found guilty of aggravated battery of an emergency response person, drug charges, robberies, armed robberies, and five other retail thefts. The State requested that defendant be sentenced toward the "higher end" of the maximum 10-year sentencing range. In mitigation, defendant submitted a letter from himself and a "Mental Health Probation" report, stating that defendant would be eligible for services from the "Mental Health Unit of the Adult Probation Department" if he was placed on probation. The trial court sentenced defendant to 2 years of mental health probation and credited him with 341 days of time served in the Cook County department of corrections.

¶ 25    The trial court then assessed fines, fees, and costs in the amount of $555, including a $20 "Preliminary Hearing-State's Attorney" fee pursuant to section 4-2002.1(a) of the Counties Code (55 ILCS 5/4-2002.1(a) (West 2008)); a $200 DNA analysis assessment pursuant to section 5-4-3(j) of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)); a $25 court services fee pursuant to section 5-1103 of the Counties Code (55 ILCS 5/5-1103 (West 2008)); and a $30 Children's Advocacy Center fee pursuant to section 5-1101(f-5) of the Counties Code (55 ILCS 5/5-1101(f-5) (West 2008)).

¶ 26    This timely appeal follows.

¶ 27                                  II. ANALYSIS

¶ 28    On this direct appeal, defendant contests his conviction for aggravated battery, but not his conviction for retail theft. Defendant argues, first, that the State failed to prove beyond a reasonable doubt that (1) defendant "knowingly" caused bodily harm to Lee, (2) defendant "struck" Lee "about the body," and (3) contests that Lee was a "merchant" pursuant to section 12-4(b)(15) of the Criminal Code of 1961 (720 ILCS 5/12-4(b)(15) (West 2008)). For

-6-

the following reasons, we affirm.

¶ 29　　Second, defendant argues that the trial court erred by assessing certain fines, fees, and costs and failing to credit defendant for days served in presentence custody against the fines imposed as part of his sentence. For the following reasons, we modify the mittimus by ordering defendant's fines and fees to be reduced by $250 from $555 to $305.

¶ 30　　　　　　　　　　　A. Sufficient Evidence of Aggravated Battery

¶ 31　　　　　　　　　　　1. Standard of Review

¶ 32　　Initially, we must determine the appropriate standard of review. Defendant argues that we should review *de novo* whether his conduct met the statutory definition of aggravated battery under section 12-4(b)(15) because the facts of this case are not in dispute. *People v. Smith*, 191 Ill. 2d 408, 411 (2000) (where "the facts are not in dispute, defendant's guilt is a question of law, which we review *de novo*"). The State argues that we should follow the standard of review formulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), by determining the sufficiency of the evidence in supporting a conviction.

¶ 33　　The United States Supreme Court held in *Jackson* that, when considering whether the evidence is sufficient to sustain a conviction, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson*, 443 U.S. at 319; *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004); *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 34　　The Illinois Supreme Court has "adopted the *Jackson* formulation of the standard of review for claims that the evidence was insufficient to sustain a conviction." *Cunningham*, 212 Ill. 2d at 278-79. "The *Jackson* standard applies in all criminal cases, regardless of the nature of the evidence." *Cunningham*, 212 Ill. 2d at 279. In applying this standard, we "must allow all reasonable inferences from the record in favor of the prosecution." *Cunningham*, 212 Ill. 2d at 280. "[O]ur function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction, "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261; *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011); *People v. Vriner*, 74 Ill. 2d 329, 342 (1978); *People v. Manion*, 67 Ill. 2d 564, 578 (1977); *People v. Bybee*, 9 Ill. 2d 214, 221 (1956). For the following reasons, we agree with the State that the *Jackson* standard applies.

¶ 35　　Although defendant argues that the facts are uncontested, he also argues his behavior is "more indicative of recklessness than of knowing conduct." Defendant's argument challenges the inferences that the trial court drew from the evidence presented at trial. Determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. *People v. Brisbon*, 106 Ill. 2d 342, 360 (1985). An inference is a "factual conclusion that can rationally be drawn by considering other facts." *People v. Funches*, 212 Ill. 2d 334, 340 (2004). If divergent inferences could be drawn from undisputed facts, a question of fact remains. *People v. McDonald*, 168 Ill. 2d 420, 447 (1995); *In re Marriage of Kneitz*, 341 Ill.

App. 3d 299, 303 (2003); *People v. Cardamone*, 232 Ill. 2d 504, 517 (2009) (defendant's intent is a "question of fact"); *People v. Willis*, 170 Ill. App. 3d 638, 641 (1988) (evidence created an "issue of fact" as to whether the defendant acted knowingly or recklessly). If the evidence presented is "capable of producing conflicting inferences, it is best left to the trier of fact for proper resolution." *McDonald*, 168 Ill. 2d at 447.

¶ 36    Therefore, we decline to honor defendant's request to apply a *de novo* standard of review, since defendant contests the inferences drawn from the evidence about his mental state, which presents disputed questions of fact. *People v. Stewart*, 406 Ill. App. 3d 518, 525 (2010) (no *de novo* review where defendant challenged "the inferences that can be drawn from the evidence" by claiming the evidence failed to establish he acted "knowingly"); *People v. Hinton*, 402 Ill. App. 3d 181, 183 (2010) (no *de novo* review where defendant "contest[ed] the inferences that can be drawn from the evidence" by claiming he had no actual knowledge); *People v. Moore*, 365 Ill. App. 3d 53, 58 (2006) (no *de novo* review because the element of knowledge is a "question of fact" and where "conflicting inferences could be drawn from the undisputed but circumstantial evidence *** questions of fact rather than law are presented").

¶ 37    However, we do apply a *de novo* standard of review to the question of whether the security guard qualified as a "merchant" under section 12-4(b)(15). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 38                    2. Elements of Aggravated Battery

¶ 39    A person commits a battery if he or she, "intentionally or knowingly without legal justification," causes bodily harm or makes physical contact of an insulting or provoking nature. 720 ILCS 5/12-3 (West 2008). A person commits aggravated battery if he or she "[k]nowingly and without legal justification and by any means causes bodily harm to a merchant who detains the person for an alleged commission of retail theft." 720 ILCS 5/12-4(b)(15) (West 2008) (aggravated battery); 720 ILCS 5/16A-5 (West 2008) (retail theft). A merchant is "an owner or operator of any retail mercantile establishment or any agent, employee, lessee, consignee, officer, director, franchisee or independent contractor of such owner or operator." 720 ILCS 5/16A-2.4 (West 2008).

¶ 40    On appeal, defendant does not dispute that: (1) he acted without legal justification; (2) he made physical contact with Lee; (3) the contact resulted in bodily harm to Lee; and (4) he was detained for an alleged commission of retail theft under section 16A-5 of the Criminal Code of 1961 (720 ILCS 5/16A-5 (West 2008)).[1]

---

[1]Lee's failure to seek medical attention was not argued by defendant. "[E]ven though a reviewing court has the power to raise unbriefed issues, it should refrain from doing so when it would have the effect of transforming the court's role from that of jurist to advocate." *People v. Givens*, 237 Ill. 2d 311, 328 (2010).

¶ 41                           3. "Knowingly" Cause Bodily Harm

¶ 42        The State must prove, as an essential element of battery, that defendant's conduct was knowing or intentional. *People v. Robinson*, 379 Ill. App. 3d 679, 684-85 (2008); *People v. Begay*, 377 Ill. App. 3d 417, 421 (2007) ("State must prove defendant's intent" in committing aggravated battery). Defendant argues that his conduct was "more indicative of recklessness" and the State did not prove beyond a reasonable doubt that defendant acted "knowingly."

¶ 43        Statutory law defines the terms at issue here: intentionally, knowingly, and recklessly. A person "acts intentionally" if the "conscious objective or purpose is to accomplish [the] result." 720 ILCS 5/4-4 (West 2008). A person "acts knowingly" if "he is consciously aware that his conduct is of such nature" that it is "practically certain" to cause the result proscribed by the offense. 720 ILCS 5/4-5(a), (b) (West 2008); *People v. Phillips*, 392 Ill. App. 3d 243, 258-59 (2009); *People v. Moore*, 358 Ill. App. 3d 683, 688 (2005); *People v. Psichalinos*, 229 Ill. App. 3d 1058, 1067 (1992). In contrast, a person "acts recklessly" if "he consciously disregards a substantial and unjustifiable risk that *** a result will follow." 720 ILCS 5/4-6 (West 2008). Recklessness is a " 'less culpable mental state' " than knowledge, and evidence of recklessness is insufficient to prove that a person acted knowingly. *People v. Fornear*, 176 Ill. 2d 523, 531 (1997) (quoting *People v. Spears*, 112 Ill. 2d 396, 408 (1986)).

¶ 44        Whether a person acted intentionally or knowingly with respect to bodily harm resulting from one's actions is, due to its very nature, often proved by circumstantial evidence, rather than by direct proof. *Begay*, 377 Ill. App. 3d at 421; *People v. Barnes*, 364 Ill. App. 3d 888, 896 (2006); *People v. Hall*, 273 Ill. App. 3d 838, 842 (1995); *People v. Lovelace*, 251 Ill. App. 3d 607, 620 (1993). Intent may be inferred (1) from the defendant's conduct surrounding the act and (2) from the act itself. *Begay*, 377 Ill. App. 3d at 421-22 (intent could be inferred from defendant's conduct immediately prior to the battery); *Barnes*, 364 Ill. App. 3d at 896 (intent could be inferred from the nature of the act itself); *People v. Bodeman*, 105 Ill. App. 3d 39, 45 (1982). It is not necessary that a defendant intended the particular injury or consequence that resulted from his conduct. *People v. Hickman*, 9 Ill. App. 3d 39, 44 (1973); *People v. Allen*, 117 Ill. App. 2d 20, 28 (1969). If a defendant "in the commission of a wrongful act commits another wrong not intended, or where in the execution of an intent to do wrong an unintended act resulting in a wrong ensues as a natural and probable consequence," a defendant "acting with a wrongful intent is responsible for the unintended wrong." *People v. Isunza*, 396 Ill. App. 3d 127, 132 (2009); *Hickman*, 9 Ill. App. 3d at 44; *Allen*, 117 Ill. App. 2d at 28.

¶ 45        In the case at bar, we cannot say that the trial court erred in finding that defendant acted knowingly beyond a reasonable doubt. Although defendant argues that his actions amounted only to "a mere attempt to disengage," his interactions with Family Dollar Store personnel consisted of more than a single act of "yank[ing] away." Defendant repeatedly attempted to leave the store and, in the process, repeatedly struggled with store personnel. Once store personnel confronted defendant about exiting the store with merchandise he had not paid for, he attempted "to push his way out the front door" of the store. He then struggled with store personnel as they forced him into the store's security office.

¶ 46    Defendant continued to struggle with store personnel once inside the security office. Witnesses testified that, over the next few minutes, defendant was "fighting," "tussel[ing]," and "wrestling" with store personnel in an effort to leave. After several failed attempts to leave, defendant attempted to "bust" through merchandise that blocked an exit in the security office. Lee attempted to stop defendant by grabbing his sweater. Defendant then "yanked from Lee," which "threw him" into a U-boat in the security office. In light of defendant's repeated efforts to leave and his knowledge that each of these attempts were followed by struggles with store personnel, we find that a rational trier of fact could have found that defendant was consciously aware that his conduct was practically certain to cause bodily harm to one of the store personnel. A rational trier of fact could have found that, by engaging in repeated struggles with the store personnel, defendant increased the likelihood that someone would be injured so that it became practically certain someone would be injured.

¶ 47    Defendant argues that the facts of this case are similar to *Willis*, which defendant argues holds that "[a]ctions such as wrestling, kicking, and flailing about are evidence of recklessness, rather than knowing conduct." In *Willis*, a campus public safety officer arrived at the scene of an incident between the defendant and several students. *Willis*, 170 Ill. App. 3d at 639. As the officer attempted to escort the defendant to the campus security office, the defendant shoved the officer "into [an] elevator and began wrestling with him." *Willis*, 170 Ill. App. 3d at 639. During this "struggle," the officer "felt pain in his groin." *Willis*, 170 Ill. App. 3d at 639. The defendant attempted to leave the elevator, but "fell and kicked" the officer again. *Willis*, 170 Ill. App. 3d at 639.

¶ 48    At trial, the officer and a student involved in the original incident testified during cross-examination that the defendant "had been wild and flailing about" when the officer was struck in the groin. *Willis*, 170 Ill. App. 3d at 639-40. The defendant requested that the trial court tender instructions to the jury for reckless conduct. *Willis*, 170 Ill. App. 3d at 640. The trial court refused, and the defendant was convicted of two counts of aggravated battery and one count of resisting a peace officer. *Willis*, 170 Ill. App. 3d at 639. On appeal, the reviewing court held that the trial court erred in failing to give the requested instruction on the lesser-included offense of reckless conduct, since "a defendant is entitled to a tendered instruction on a lesser included offense if there is any evidence fairly tending to bear upon it." *Willis*, 170 Ill. App. 3d at 641. The trial court found that the testimony that defendant had been " 'wild and flailing about' " was "sufficient to create an issue of fact as to whether the defendant acted 'knowingly' or 'recklessly.' " *Willis*, 170 Ill. App. 3d at 641.

¶ 49    We find the case at bar distinguishable from *Willis* because, first, the standard of review is different. Here we inquire, after reviewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Cunningham*, 212 Ill. 2d at 278; *Collins*, 106 Ill. 2d at 261. Second, *Willis* was a jury case. Since the jury was the trier of fact, it was within its purview to decide whether the defendant acted knowingly or recklessly. By contrast, in *Willis,* the appellate court inquired whether there was any evidence tending to bear upon the defendant's claim. *Willis*, 170 Ill. App. 3d at 641. In *Willis*, the appellate court found that a jury could have believed defendant acted recklessly based on the evidence. By contrast, in the case at bar, the trial court considered and rejected defendant's argument that

-10-

the evidence suggested that defendant acted recklessly, rather than knowingly. We cannot say that the trial court acted irrationally in finding defendant acted knowingly based on defendant's repeated struggles with store personnel following his repeated escape attempts.

¶ 50    Defendant also cites three cases in which reviewing courts found a defendant's conduct during the course of an escape was only reckless. We find these cases distinguishable from the case at bar.

¶ 51    The first case that defendant cites is *People v. Belk*, 203 Ill. 2d 187 (2003). In *Belk*, the defendant was pursued by police after he stole a van. *Belk*, 203 Ill. 2d at 189. The defendant traveled at over 100 miles per hour in a highly populated area where the posted speed limit was 30 miles per hour. *Belk*, 203 Ill. 2d at 190. The defendant crashed into the rear of another vehicle and both occupants died as a result of the impact. *Belk*, 203 Ill. 2d at 190. The defendant was convicted of two counts of felony murder and one count of aggravated possession of a stolen motor vehicle. *Belk*, 203 Ill. 2d at 191. The defendant appealed, arguing that aggravated possession of a stolen motor vehicle was not an enumerated forcible felony under the felony-murder statute and that his conviction should be reduced to reckless homicide. *Belk*, 203 Ill. 2d at 191.

¶ 52    The Illinois Supreme Court in *Belk* held that, to qualify as a forcible felon under the felony-murder statute, a defendant must have "contemplated that the use of force or violence against an individual might be involved and that they were *willing* to use such force *** in order to make their escape." (Emphasis in original). *Belk*, 203 Ill. 2d at 196. The court held that "there [was] no evidence that either Belk or his accomplice was armed, and no evidence that they contemplated and were willing to use force or violence against an individual to *** escape." *Belk*, 203 Ill. 2d at 196. There was also "no evidence that Belk contemplated that striking another vehicle might be necessary to accomplish his escape." *Belk*, 203 Ill. 2d at 196. Therefore, the court held that aggravated possession of a stolen motor vehicle is not a forcible felony for the felony-murder statute, since the evidence did not suggest that the defendant "contemplated that the use of force *** against an individual might be involved in attempting to elude police." *Belk*, 203 Ill. 2d at 198.

¶ 53    In the case at bar, the applicable legal standard is also different from the standard applied in *Belk*. Here, the question is whether defendant's conduct shows that he was "consciously aware that his conduct is of such nature" that it was "practically certain" to "cause[ ] bodily harm to a merchant." 720 ILCS 5/4-5(a), (b) (West 2008); 720 ILCS 5/12-4(b)(15) (West 2008). In contrast, the question for the *Belk* court was whether the defendant "contemplated *** the use of force" and was "willing to use such force" to make his escape. (Emphasis omitted.) *Belk*, 203 Ill. 2d at 196. Unlike in *Belk*, defendant's failure to contemplate that the use of force might be necessary to accomplish his escape does not mean he could not have acted knowingly.

¶ 54    Defendant also argues that the *Belk* court "held that defendant was merely reckless because, though he was aware his actions 'might' involve force of [*sic*] threat of force, there was no evidence he knew his actions were practically certain to cause harm." However, the *Belk* court was not faced with the question of whether Belk's conduct was practically certain to cause harm pursuant to section 4-5(b) of the Criminal Code of 1961 (720 ILCS 5/4-5(b)

(West 2008)). The court analyzed only whether "defendant's knowledge that his actions *might* involve the threat or use of force" was sufficient "to make a felony a forcible felony" under the felony-murder statute. (Emphasis in original.) *Belk*, 203 Ill. 2d at 197. Therefore, the analysis in *Belk* is not applicable to this case.

¶ 55    The second case that defendant cites is *People v. Schmidt*, 392 Ill. App. 3d 689 (2009). In *Schmidt*, the defendant was driving a stolen vehicle when he was approached at a stoplight by a police officer. *Schmidt*, 392 Ill. App. 3d at 693. The officer told the defendant to stop the vehicle, but the defendant sped away, hitting the officer's left forearm with his driver's side-view mirror. *Schmidt*, 392 Ill. App. 3d at 693. As the defendant drove away, he lost control of the vehicle and struck a family that was crossing the street, killing one person and injuring the four other family members. *Schmidt*, 392 Ill. App. 3d at 691, 694. The defendant was convicted of felony murder, aggravated possession of a stolen motor vehicle, and aggravated battery of the officer and the four family members. *Schmidt*, 392 Ill. App. 3d at 691.

¶ 56    On appeal, we reversed the defendant's felony-murder conviction. In accordance with *Belk*, we held that the "[m]ost telling fact is that [the] defendant *** was unarmed," which showed he did not contemplate that the use of force "might be necessary in order for him to accomplish his escape" from the officer. (Internal quotation marks omitted.) *Schmidt*, 392 Ill. App. 3d at 699. We also reversed the defendant's conviction for aggravated battery of the four surviving family members because "defendant attempted to slow down but failed because he was driving too fast." *Schmidt*, 392 Ill. App. 3d at 706. The defendant was not "consciously aware that he was practically certain" to hit someone considering he did not drive through a crowded area and only drove at a "very high rate of speed" for "a couple of blocks." (Internal quotation marks omitted.) *Schmidt*, 392 Ill. App. 3d at 705-07. However, we affirmed the defendant's conviction for aggravated battery of the officer. The officer was so close to the defendant's vehicle that the defendant was consciously aware that he was practically certain to hit the officer with his vehicle when he sped away. *Schmidt*, 392 Ill. App. 3d at 702-03.

¶ 57    In the case at bar, defendant's aggravated battery of Lee is more similar to the battery of the officer than the battery of the four surviving family members in *Schmidt*. Here, defendant was outnumbered by store personnel, knew the police were on their way, and continued to attempt to leave the premises. Unlike the battery of the family members in *Schmidt*, defendant did not merely lose control during his effort to leave. Instead, defendant knew that he would struggle with store employees during each attempt. Defendant "yanked" away from Lee to continue to leave, which is comparable to the *Schmidt* defendant's decision to speed away from the officer. Lee was so close to defendant, as the officer was to the *Schmidt* defendant, that it was practically certain he would be injured when defendant "yanked" away from him.

¶ 58    The third escape case defendant cites is *In re T.A.B.*, 181 Ill. App. 3d 581 (1989). In *T.A.B.*, the defendant, a minor, was convicted of criminal damage to property after he took his foster father's vehicle, drove 70 miles per hour, and clipped the bumper of another vehicle before hitting a telephone pole. *T.A.B.*, 181 Ill. App. 3d at 583-84. The passenger in the defendant's vehicle testified that when defendant observed the other vehicle, he

-12-

attempted to shift gears to slow down but was unable to do so. *T.A.B.*, 181 Ill. App. 3d at 584. He then hit the brakes and the tires locked. *T.A.B.*, 181 Ill. App. 3d at 584.

¶ 59    On appeal, the defendant argued that the State failed to prove beyond a reasonable doubt that he acted "knowingly" when he damaged the vehicles. The appellate court held, that although the defendant was driving at a "highly excessive" rate of speed during his "joyriding escapade[ ]," "it cannot be said that he was consciously aware that he was practically certain to damage the two automobiles in question as a result." *T.A.B.*, 181 Ill. App. 3d at 585, 586. The defendant did not deliberately damage either, and although "traveling 70 miles per hour on a street with a speed limit of 35 miles per hour would substantially increase one's chance of becoming involved in an accident, it would not make such an occurrence a practical certainty." *T.A.B.*, 181 Ill. App. 3d at 585. Therefore, the defendant's conduct demonstrates that he may have been negligent or reckless, but not that he knowingly damaged either vehicle. *T.A.B.*, 181 Ill. App. 3d at 585.

¶ 60    Unlike *T.A.B.*, defendant in the case at bar was not on a "joyriding escapade," but was attempting to escape from store personnel after committing retail theft. Furthermore, the defendant in *T.A.B.* failed to gain control of his vehicle after attempting to shift gears and hitting the brakes. Here, defendant made no effort, in essence, to shift gears or hit the brakes. He knew that each attempted escape was followed by struggles with store staff, which means that he knew that he increased the potential for harm by repeatedly attempting to escape. While we agree with defendant that he did not "flee at high rates of speed through heavily populated areas in a potentially deadly vehicle" like the defendants in *Belk*, *Schmidt*, and *T.A.B.*, these cases are legally and factually distinguishable from defendant's repeated attempts to leave the Family Dollar Store.

¶ 61    The State argues that the facts of this case are similar to *People v. Rickman*, 73 Ill. App. 3d 755 (1979), in which the defendant was convicted of two counts of aggravated battery. *Rickman*, 73 Ill. App. 3d at 756. Defendant argues that *Rickman* was wrongly decided. In *Rickman*, a retail store security officer confronted the defendant, believing he had taken a pair of jeans without paying for them. *Rickman*, 73 Ill. App. 3d at 757. The defendant returned the pants and the security officer grabbed him. *Rickman*, 73 Ill. App. 3d at 757. The defendant escaped from the security officer and fled, but he stopped running after the officer told him to stop. *Rickman*, 73 Ill. App. 3d at 757. The defendant then struggled with the security officer to resist his efforts to place the defendant in handcuffs. *Rickman*, 73 Ill. App. 3d at 757. Another security officer joined them and handcuffed one of the defendant's wrists. *Rickman*, 73 Ill. App. 3d at 757. During the struggle to attach the handcuffs to the defendant's other wrist, the defendant fell on top of one of the security officers, fracturing his ankle. *Rickman*, 73 Ill. App. 3d at 757. The defendant then stood up and continued to struggle with the other security officer by "shoving, hitting, and kicking" him until he fractured the officer's leg. *Rickman*, 73 Ill. App. 3d at 758.

¶ 62    On appeal, the defendant argued that trial court erred in finding that he was guilty beyond a reasonable doubt of knowingly causing great bodily harm to the officers, since "[h]e was attempting to escape, not harm" the security officer. *Rickman*, 73 Ill. App. 3d at 759. The appellate court affirmed both counts of battery because, "the State need only show that [defendant] knowingly scuffled with [the officer] and that [the officer] received great bodily

harm as a result of the scuffle." *Rickman*, 73 Ill. App. 3d at 760. "That the defendant did not intend to break [the officer's] ankle is immaterial; he did intend to scuffle with [the officer] and he must accept responsibility for the result of the scuffle." *Rickman*, 73 Ill. App. 3d at 760. The appellate court further held that "[a]nyone who engages in a scuffle must be deemed to be aware that someone may be injured as a result." *Rickman*, 73 Ill. App. 3d at 760.

¶ 63   We agree with the State that the facts of the case at bar are similar to *Rickman*. Like *Rickman*, defendant was accused of retail theft and was confronted by store personnel. Both defendants attempted to escape and then struggled with store personnel after they were caught. Both defendants engaged in multiple attempts to escape and resisted efforts of security officers to restrain them by struggling and fighting with them. In *Rickman*, the defendant injured a security officer when he fell on him during a struggle. Here, the defendant injured a security officer when he "yanked" from the officer, which "threw" him into a U-boat in the security office. Defendants in both cases knowingly struggled with store personnel and "must accept responsibility for the result of the scuffle." In each case, it was practically certain that someone would be hurt during defendants' repeated struggles and fights with store personnel. We decline to find that *Rickman* was wrongly decided.

¶ 64   Therefore, reviewing the evidence in the light most favorable to the prosecution, we find that the trial court could have rationally found that defendant acted knowingly beyond a reasonable doubt.

¶ 65                              B. "Struck" About the Body

¶ 66   Defendant argues that the State failed to meet its burden of proving every element as charged in the indictment because it did not introduce evidence that defendant "struck" Lee "about the body." The State argues that defendant's claim is really a variance claim, rather than a "failure of proof" argument, and we agree.

¶ 67   The State "must prove the essential elements of the charging instrument." *People v. Rothermel*, 88 Ill. 2d 541, 544 (1982). For a variance between the charging instrument and the proof at trial to be fatal, the difference "must be material and be of such character as may mislead the defendant in making his or her defense, or expose the defendant to double jeopardy." *People v. Maggette*, 195 Ill. 2d 336, 351 (2001). Each indictment must state " 'the name of the accused, the name, date and place of the offense, cite[ ] the statutory provision alleged to have been violated and set forth in the language of the statute the nature and elements of the offense charged.' " *People v. Collins*, 214 Ill. 2d 206, 219 (2005) (quoting *People v. Simpkins*, 48 Ill. 2d 106, 111 (1971)). "[I]mmaterial matters, or matters which may be omitted from an indictment without rendering it insufficient or doing damage to the material averments, may be regarded as surplusage." *People v. Figgers*, 23 Ill. 2d 516, 519 (1962); *People v. Crawford*, 23 Ill. 2d 605, 607 (1962). If the essential elements of an offense are properly charged but the *manner* in which the offense is committed is incorrectly alleged, the error is one of form. *People v. Nathan*, 282 Ill. App. 3d 608, 611 (1996); *Simpkins*, 48 Ill. 2d at 111.

¶ 68   We agree with the State that the difference between the proof at trial and the charges

specified in the indictment amounts to a variance. Sufficiency of the evidence is not at issue here because the evidence was sufficient to prove defendant guilty of aggravated battery. The evidence conformed to the indictment insofar as the indictment charged defendant with violating section 12-4(b)(15), which makes it unlawful to "[k]nowingly and without legal justification and by any means cause[ ] bodily harm to a merchant who detains the person for an alleged commission of retail theft." 720 ILS 5/12-4(b)(15) (West 2008). The indictment went on to specify that defendant "to wit: struck James Lee about the body." The trial court noted that defendant was "charged with striking James Lee about the body which didn't actually happen," but found that defendant "caus[ed] Lee to be struck about the body." The issue before us is whether the variance between the proof at trial and the indictment's charge is fatal.

¶ 69        Defendant argues that the indictment must set forth "the nature of how the [aggravated battery] occurred," because a difference between the proof at trial and the indictment on this element is material. However, "[w]hen a crime [such as aggravated battery] can be committed by several acts *** a variance between the act named in the indictment and the act proved will not be fatal." *People v. Burdine*, 362 Ill. App. 3d 19, 24 (2005) (finding no variance where the proof at trial showed defendant committed aggravated battery when he " 'bit' " the victim but the indictment specified that defendant " 'struck' " the victim); *People v. Coleman*, 49 Ill. 2d 565, 571 (1971) (holding that the means or manner by which defendant committed murder was not an essential part of the indictment); *Simpkins*, 48 Ill. 2d at 110-11 (holding the variance was not fatal where the complaint charged that defendants had " 'disturb[ed] the peace by firing a revolver' " but the State proved they had disturbed the peace by " 'participating in a gang fight' " because the " 'particular means by which each defendant participated in the creation of the disturbance was not critical' "); *Nathan*, 282 Ill. App. 3d at 611 (State's amendment to the indictment to "change[ ] the manner in which defendant committed" (emphasis omitted) aggravated battery "did not alter any essential element of the indictment").

¶ 70        Here, the State's indictment charged that defendant "struck" Lee about the body. The State proved at trial that defendant caused Lee to be "struck" about the body. *Burdine*, 362 Ill. App. 3d at 24 ("[o]ne may strike another with a foreign object"). The difference between whether defendant struck Lee about the body or caused Lee to be struck about the body relates to the manner in which defendant caused bodily harm to Lee. Defendant has not shown us how a variance between the indictment and the proof on trial about the manner in which this aggravated battery was committed is either material or inadequate notice of the charge. Therefore, we cannot say that this difference was material.

¶ 71        Furthermore, defendant has not been exposed to double jeopardy. Defendant's indictment specified the " 'name of the accused, the name, date, and place of the offense,' " " 'the statutory provision alleged to have been violated,' " and " 'set forth in the language of the statute the nature and elements of the offense charged.' " *Collins*, 214 Ill. 2d at 219 (quoting *Simpkins*, 48 Ill. 2d at 111). "If any future prosecution were attempted, prior prosecution on the same facts could be proved by resort to the record." *People v. Jones*, 245 Ill. App. 3d 674, 677 (1993); *People v. Johnson,* 65 Ill. 2d 332, 339 (1976).

¶ 72        Therefore, we cannot say that the variance between the indictment and the proof at trial

about the manner in which defendant caused bodily harm to Lee was either material or would expose defendant to double jeopardy.

¶ 73                    C. Private Security Officer Qualifies as a "Merchant"

¶ 74     Defendant argues that a "private security officer" like James Lee cannot qualify as a "merchant" under section 12-4(b)(15). The question of whether a "private security officer" can also qualify as a "merchant" under section 12-4(b)(15) is a question of statutory construction. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). The best indication of legislative intent is the plain and ordinary meaning of the statutory language. *Koster*, 235 Ill. 2d at 29. Where the language is clear and unambiguous, we must apply the statute without resort to other aids of statutory construction. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 46 (2002). If the statutory language is ambiguous, we look to other sources to decide the legislature's intent. *Koster*, 235 Ill. 2d at 29. The construction of a statute is a question of law that is reviewed *de novo. Koster*, 235 Ill. 2d at 29.

¶ 75     A person commits aggravated battery if he or she "[k]nowingly and without legal justification and by any means causes bodily harm to a merchant who detains the person for an alleged commission of retail theft." 720 ILCS 5/12-4(b)(15) (West 2008). Defendant argues that two provisions of the aggravated battery statute are relevant to interpreting the meaning of the term "merchant" under this section. First, section 12-4(b)(15), states that " 'merchant' has the meaning ascribed to it in section 16A-2.4 of this Code." 720 ILCS 5/12-4(b)(15) (West 2008). Under section 16A-2.4, "merchant" is defined as "an owner or operator of any retail mercantile establishment or any agent, employee, lessee, consignee, officer, director, franchisee or independent contractor of such owner or operator." 720 ILCS 5/16A-2.4 (West 2008).

¶ 76     Second, under section 12-4(b)(20), a defendant commits aggravated battery if he or she "[k]nows the individual harmed to be a private security officer engaged in the performance of any of his or her official duties, or to prevent the private security officer from performing official duties, or in retaliation for the private security officer performing official duties." 720 ILCS 5/12-4(b)(20) (West 2008). "[P]rivate security officer" means "a registered employee of a private security contractor agency" (720 ILCS 5/12-4(b) (West 2008)), which is defined as "a person, firm, corporation, or other legal entity that engages in the private security contractor business and that employs, in addition to the licensee-in-charge, one or more persons in conducting such business" (225 ILCS 447/5-10 (West 2008)). While aggravated battery of a merchant is a Class 3 felony, aggravated battery of a private security officer is a Class 2 felony. 720 ILCS 5/12-4(e)(1), (e)(2) (West 2008).

¶ 77     Defendant argues that, taking these two sections together, private security officers cannot be considered merchants because the legislature has "clearly distinguished" between these categories under section 12-4(b) and they must have non-overlapping, "distinct meanings." We are not persuaded by defendant's argument.

¶ 78     First, the plain and ordinary meaning of section 12-4(b)'s categories suggests that a defendant's conduct can fall under multiple categories. For example, a defendant could

commit aggravated battery by using "a deadly weapon other than by the discharge of a firearm" and being "hooded, robed or masked, in such manner as to conceal his identity." 720 ILCS 5/12-4(b)(1) (deadly weapon), 12-4(b)(2) (West 2008) (conceal identity). There is nothing in the language of section 12-4(b) that precludes defendant from being charged with aggravated battery under either section 12-4(b)(1) or section 12-4(b)(2). In fact, several courts have reached a similar conclusion.

¶ 79    In *In re Rodney S.*, 402 Ill. App. 3d 272 (2010), the defendant threw multiple objects at a school bus monitor while he was driving. *In re Rodney S.*, 402 Ill. App. 3d 272, 275 (2010). The State charged the defendant with aggravated battery on a public way, in violation of section 12-4(b)(8) and aggravated battery of a school employee, in violation of section 12-4(b)(18). *In re Rodney S.*, 402 Ill. App. 3d at 273. However, the defendant's two convictions were each for the same physical act, and the appellate court vacated the convictions because they violated the one-act, one-crime rule. *In re Rodney S.*, 402 Ill. App. 3d at 281-85.

¶ 80    The appellate court in *In re Rodney S.* noted that "each blow to [the school bus monitor] could have supported a separate finding of guilt for aggravated battery" had the "charging document reflect[ed] the State's intent to apportion the accused's conduct and prosecute the accused for multiple crimes." (Internal quotation marks omitted.) *In re Rodney S.*, 402 Ill. App. 3d at 284. The appellate court remanded the case to the trial court to correct its "Adjudication Order" once it determined which aggravated battery count was the more serious offense. *In re Rodney S.*, 402 Ill. App. 3d at 285. The appellate court did not specify which section 12-4(b) category the defendant's conduct fell into because each separate strike could have supported convictions under either section 12-4(b)(8) or section 12-4(b)(18). See also *In re Samantha V.*, 234 Ill. 2d 359, 378 (2009) (defendant's conviction violated the one-act, one-crime rule but his conduct could support aggravated battery convictions for causing great bodily harm under section 12-4(a) and battery on a public way under section 12-4(b)(8)); *People v. Crespo*, 203 Ill. 2d 335, 344-45 (2001) (remanded where the State charged the defendant with aggravated battery for causing great bodily harm under section 12-4(a) and for use of a deadly weapon under section 12-4(b)(1) because the State failed to "apportion these crimes among the stab wounds").

¶ 81    Second, section 12-4(b)) does not include language suggesting that conduct meeting the requirements of one category cannot overlap with conduct that meets the requirements of any other category under this section. There is no language in section 12-4(b) suggesting either that all categories should be read as exclusive. There is also no language suggesting that only some categories should be read as exclusive, while others should be read as permitting conduct to fall under multiple categories. Even if the categories relating to physical characteristics or locations are excluded from our analysis, a defendant's conduct could still fall under more than one section 12-4(b) category relating to occupations. For example, a defendant who knowingly batters a school employee could be charged under section 12-4(b)(3) ("[k]nows the individual harmed to be a teacher or other person employed in any school") or charged under section 12-4(b)(18) ("[k]nows the individual harmed to be an officer or employee of the State of Illinois, a unit of local government, or *school district*"). (Emphasis added.) 720 ILCS 5/12-4(b)(3), (b)(18) (West 2008). We cannot find a textual basis supporting defendant's interpretation that section 12-4(b)'s categories should be read

as exclusive and not overlapping.

¶ 82    Third, the amendment that added subdivision (b)(15) to section 12-4(b) was signed into law on July 14, 1997. Pub. Act 90-115, § 5 (eff. Jan. 1, 1998) (adding 720 ILCS 5/12-4(b)(15)). The amendment that added subdivision (b)(20) to section 12-4(b) was signed into law on August 17, 2007. Pub. Act 95-236, § 5 (eff. Jan. 1, 2008) (adding 720 ILCS 5/12-4(b)(20)). The intent of section 12-4(b) is "to afford greater protection to those subjected to special risks in performing [their] public duties." *In re V.P.*, 139 Ill. App. 3d 786, 789 (1985). In light of this intent, we cannot find that the subsequent addition of section 12-4(b)(20) was intended to narrow the scope of conduct that falls within section 12-4(b)(15).

¶ 83    Fourth, while aggravated battery of a merchant under section 12-4(b)(15) is a Class 3 felony, aggravated battery of a private security officer under section 12-4(b)(20) is a Class 2 felony. The defendant's interpretation restricts the State's ability to charge defendants under section 12-4(b)(15) by limiting the State's ability, as a matter of prosecutorial discretion, to prove either charge based on the circumstances of each case. It would also mean that some defendants who might have been charged with a Class 3 felony (section 12-4(b)(15)), could only be charged with a Class 2 felony (section 12-4(b)(20)).

¶ 84    We find that a private security officer can qualify as a "merchant" under section 12-4(b)(15).

### D. James Lee Qualifies as a "Merchant"

¶ 85

¶ 86    Defendant argues that the State failed to prove beyond a reasonable doubt that James Lee qualifies a "merchant" under section 16A-2.4. For the reasons discussed below, we find that the evidence in the trial record was sufficient to establish that Lee was an "independent contractor" of the Family Dollar Store and therefore qualifies as a "merchant" under section 16A-2.4. Since defendant was charged with aggravated battery of a merchant, we need not reach a conclusion of whether the evidence presented at trial was also sufficient to prove defendant committed aggravated battery of a "private security officer" under section 12-4(b)(20).

¶ 87    A merchant is "an owner or operator of any retail mercantile establishment or any agent, employee, lessee, consignee, officer, director, franchisee or independent contractor of such owner or operator." 720 ILCS 5/16A-2.4 (West 2008). "An independent contractor *** undertakes to produce a certain result [but is not] controlled as to the method [in which he obtains] that result." *Spivey v. Brown*, 150 Ill. App. 3d 139, 143 (1986). An employer who hires an independent contractor is generally not liable for the negligent or intentional acts or omissions of the contractor. *Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill. 2d 19, 21 (1971). In contrast, a principal-agent relationship exists when "the principal has the right to control the manner and method in which the agent performs his work and the agent has the ability to subject the principal to personal liability." *Lang v. Silva*, 306 Ill. App. 3d 960, 972 (1999). The question of whether one is an agent, an employee, or an independent contractor is generally a question of fact. *Shoemaker v. Elmhurst-Chicago Stone Co.*, 273 Ill. App. 3d 916, 920 (1994). If the relationship is so clear as to be indisputable, the question may be decided as a matter of law. *Shoemaker*, 273 Ill. App. 3d at 921.

¶ 88    In the case at bar, we find that the trial court could have rationally found that Lee was an independent contractor beyond a reasonable doubt. Lee testified that he was employed by Metro One Security. He wore a winter coat with the word "security" printed in large letters on the back of the coat and "Metro Loss Prevention" on the front breast. He testified that Metro One Security assigned him to work at the Family Dollar Store. Jones testified that he was a security guard at the store and that store management notified him when defendant attempted to leave the store without paying for merchandise. Lee testified that he attempted to stop defendant from leaving the store at the request of store personnel. Lee also assisted store personnel in restraining defendant and keeping him in the store's security office until police arrived to take defendant into custody.

¶ 89    Defendant argues that the evidence was not sufficient to prove Lee was an independent contractor because the State presented no evidence on how Lee was paid, the skill level required to be a Family Dollar Store security guard, who provided Lee with his necessary tools, materials, or equipment, and whether he had been assigned to work at the Family Dollar Store before November 25, 2008. We agree with defendant that this evidence could be used to distinguish between whether Lee qualified as the Family Dollar Store's agent, instead of an independent contractor.[2] However, whether he is an agent or an independent contractor is immaterial for our purposes because either one qualifies him as a "merchant." 720 ILCS 5/16A-2.4 (West 2008). In addition, the evidence presented regarding Metro One Security's employment of Lee, its assignment of Lee to work at the Family Dollar Store, Lee's compliance with directions of Family Dollar Store personnel, Lee's assistance of other store personnel, and his access to the store's security office was sufficient to show that Lee was an independent contractor. Although the State argues that Lee was an agent, rather than an independent contractor, we need not resolve this question, since either would result in an affirmance. *People v. Durr*, 215 Ill. 2d 283, 296 (2005) (we may affirm on any basis supported by the record).

¶ 90    Therefore, reviewing the evidence in the light most favorable to the prosecution, we find that the trial court could have rationally found that defendant Lee was an independent contractor of the Family Dollar Store, and therefore qualifies as a merchant pursuant to section 12-4(b)(15).


¶ 91                              E. "Know" Lee was a "Merchant"

¶ 92    Defendant argues the evidence did not prove defendant "knew" Lee was a merchant. We

---

[2]To determine between agent or employee and independent contractor, courts may consider the following factors: the right to control the manner in which the work is performed; the right to discharge; the method of payment; whether taxes are deducted from the payment; the level of skill required to perform the work; and the furnishing of the necessary tools, materials, or equipment. *Davis*, 261 Ill. App. 3d at 852-53; *Shoemaker*, 273 Ill. App. 3d at 920. No single factor is determinative but the right to control the manner in which the work is performed is considered to be the predominant factor. *McConnell v. Freeman United Coal Co.*, 198 Ill. App. 3d 322, 325-26 (1990); *Walker v. Midwest Emery Freight Systems*, 119 Ill. App. 3d 640, 645-46 (1983).

are not persuaded by defendant's argument.

¶ 93        Lee wore black uniform pants, a black jersey, and a hooded three-quarter length winter coat with the word "security" printed in large letters on the back of the coat and "Metro Loss Prevention" on the front breast. Lee, along with Family Dollar Store employees, prevented defendant from leaving the store by restraining him and bringing him into the store's security office. Lee worked in concert with Family Dollar Store personnel to restrain defendant until the police arrived. In light of this evidence, the trial court could have rationally found that defendant knew Lee was a merchant under section 12-4(b)(15). The State need not prove that defendant knew the precise nature of Lee's employment relationship with the Family Dollar Store to prove that defendant knew he was a merchant under section 12-4(b)(15).

¶ 94                    F. "Employee" of the Family Dollar Store

¶ 95        Defendant argues that the indictment stated Lee was "an employee of Family Dollar Store" and the evidence proved that he was an employee of Metro One Security. Defendant concludes that the evidence was insufficient to show defendant committed aggravated battery under section 12-4(b)(15). We believe defendant's claim is really a variance argument.

¶ 96        As explained above, for a variance between the charging instrument and the proof at trial to be fatal, the difference "must be material and be of such character as may mislead the defendant in making his or her defense, or expose the defendant to double jeopardy." *Maggette*, 195 Ill. 2d at 351. "[I]mmaterial matters, or matters which may be omitted from an indictment without rendering it insufficient or doing damage to the material averments, may be regarded as surplusage." *Figgers*, 23 Ill. 2d at 519; *Crawford*, 23 Ill. 2d at 607.

¶ 97        As explained above, we find that Lee qualifies as an independent contractor of the Family Dollar Store. Defendant has not shown us how the difference between the fact that the indictment that stated Lee was an "employee" and the proof at trial that showed Lee was an "independent contractor" was material or inadequate notice of the charge. Defendant did not raise this issue at trial and he has not shown us how this difference misled him in preparing his defense. Furthermore, defendant has not been exposed to double jeopardy because "[i]f any future prosecution were attempted, prior prosecution on the same facts could be proved by resort to the record." *Jones*, 245 Ill. App. 3d at 677; *Johnson*, 65 Ill. 2d at 339.

¶ 98        Therefore, we cannot say that the variance between the indictment and the proof at trial about the employment relationship between Lee and the Family Dollar Store was either material, prejudiced defendant, or would expose defendant to double jeopardy.

¶ 99                    G. Fines and Fees

¶ 100       Defendant claims that he is entitled to a $275 reduction in the costs and fees he was ordered to pay, and the State agrees. For the reasons discussed below, we order defendant's fines and fees reduced by $250 from $555 to $305, and order that the mittimus be corrected accordingly. *People v. Maldonado*, 402 Ill. App. 3d 411, 434 (2010) (ordering that defendant's fines and fees be reduced by a certain amount and that "his mittimus be corrected accordingly" (internal quotation marks omitted)).

¶ 101    Specifically, defendant argues that several fees were erroneously assessed by the trial court. In an order dated November 5, 2009, the trial court directed defendant to pay $555 for various costs and fees. On appeal, the State agrees that the $20 "Preliminary Hearing-State's Attorney" fee should not have been assessed against defendant pursuant to section 4-2002.1(a) of the Counties Code (55 ILCS 5/4-2002.1(a) (West 2008)) because there was no preliminary hearing. The State also agrees that the $200 DNA analysis assessment pursuant to section 5-4-3(j) of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)) should not have been assessed against defendant. Defendant had already submitted a blood sample after a prior conviction and does not need to submit a new sample. *People v. Marshall*, 242 Ill. 2d 285, 302 (2011).

¶ 102    The State also agrees that the $25 court services fee imposed pursuant to section 5-1103 of the Counties Code (55 ILCS 5/5-1103 (West 2008)) should not have been assessed against defendant because this fee applies only to the offenses enumerated in the statute and defendant was not convicted of one of those offenses. See 55 ILCS 5/5-1103 (West 2008). Section 5-1103 of the Counties Code provides:

> "A county board may enact by ordinance or resolution a court services fee dedicated to defraying court security expenses incurred by the sheriff in providing court services or for any other court services deemed necessary by the sheriff to provide for court security ***. Such fee shall be paid in civil cases by each party at the time of filing the first pleading, paper or other appearance ***. In criminal, local ordinance, county ordinance, traffic and conservation cases, such fee shall be assessed against the defendant upon a plea of guilty, stipulation of facts or findings of guilty, resulting in a judgment of conviction, or order of supervision, *or sentence of probation without entry of judgment pursuant to Section 10 of the Cannabis Control Act, Section 410 of the Illinois Controlled Substances Act, Section 70 of the Methamphetamine Control and Community Protection Act, Section 12-4.3 of the Criminal Code of 1961, Section 10-102 of the Illinois Alcoholism and Other Drug Dependency Act, Section 40-10 of the Alcoholism and Other Drug Abuse and Dependency Act, or Section 10 of the Steroid Control Act.* In setting such fee, the county board may impose, with the concurrence of the Chief Judge of the judicial circuit in which the county is located by administrative order entered by the Chief Judge, differential rates for the various types or categories of criminal and civil cases, but the maximum rate shall not exceed $25. All proceeds from this fee must be used to defray court security expenses incurred by the sheriff in providing court services. No fee shall be imposed or collected, however, in traffic, conservation, and ordinance cases in which fines are paid without a court appearance. The fees shall be collected in the manner in which all other court fees or costs are collected and shall be deposited into the county general fund for payment solely of costs incurred by the sheriff in providing court security or for any other court services deemed necessary by the sheriff to provide for court security." (Emphasis added.) 55 ILCS 5/5-1103 (West 2008).

¶ 103    This court has previously held that the court services fee can be properly assessed even though the offense for which the defendant was convicted was not listed in the statute. *People v. Anthony*, 408 Ill. App. 3d 799, 811 (2011) (court services fee properly assessed

although defendant was convicted of unlawful possession of a weapon by a felon); *People v. Adair*, 406 Ill. App. 3d 133, 144-45 (2010) (court services fee properly assessed although defendant was convicted of possession of a controlled substance); *People v. Williams*, 405 Ill. App. 3d 958, 965 (2010) (court services fee properly assessed although defendant was convicted of unlawful use of a weapon by a felon and aggravated unlawful use of a weapon).

¶ 104 The best indication of legislative intent is the plain and ordinary meaning of the statutory language. *Koster*, 235 Ill. 2d at 29. "The general rule of grammar and law is that the relative terms refer to the next preceding antecedent unless it is clear from the context that a different one was intended." *Sharp v. Sharp*, 333 Ill. 267, 277 (1928). The legislature is "presumed to know the meaning of words and the rules of grammar." (Internal quotation marks omitted.) *Crane v. Chicago & Western Indiana R.R. Co.*, 233 Ill. 259, 267 (1908).

¶ 105 Section 5-1103 lists several types of adjudications and then provides a list of statutes. We read this list of statutes as modifying only the last type of adjudication: "sentence of probation." We read this sentence this way because, first, the list of statutes comes immediately after this particular adjudication, which indicates the statutes modify only this particular adjudication. Second, there is no comma separating this particular adjudication from the words "pursuant to" which introduce the list of statutes. Third, the types of adjudications are all separated by commas, and there is a comma between "or order of supervision" and "or sentence of probation." The inclusion of an "or" and a comma between "order of supervision" and "sentence of probation" indicates that the list of statutes modifies only "sentence of probation" rather than all of the adjudications. Fourth, there is an "or" in front of both "order of supervision" and "sentence of probation." This indicates that "sentence of probation" is separate from both judgments of conviction and orders of supervision, and supports the conclusion that the list of statutes modifies only "sentence of probation" rather than all of the adjudications. Therefore, we follow the holdings in *Anthony*, *Adair*, and *Williams* and find that the court services fee was properly assessed following defendant's convictions.

¶ 106 Defendant also argues that, pursuant to section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2008)), he is entitled to a credit of $5 per day for the 341 days that he spent in custody between his arrest and sentencing. *People v. Caballero*, 228 Ill. 2d 79, 88-89 (2008) (credit pursuant to section 110-14 applies anytime a person is incarcerated between arrest and sentencing); *People v. Rivera*, 378 Ill. App. 3d 896, 898-900 (2008). Section 110-14(a) provides that "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated on application of defendant." 725 ILCS 5/110-14(a) (West 2008). According to section 110-14, the amount of the available credit is calculated by multiplying $5 by the number of days of incarceration. 725 ILCS 5/110-14(a) (West 2008). Multiplying $5 by the defendant's 341 days of incarceration yields a total of $1,705. 725 ILCS 5/110-14 (West 2008).

¶ 107 Section 110-14 specifies that this credit is available only against a "fine." On appeal, the State agrees that the $30 for the Children's Advocacy Center pursuant to section 5-1101(f-5) of the Counties Code (55 ILCS 5/5-1101(f-5) (West 2008)) should be considered a fine and should be offset against the $1,705 credit. In *People v. Mimes*, 2011 IL App (1st) 082747,

we held that the Children's Advocacy Center fee should be characterized as a "fine." *Id.* at ¶ 84; *People v. Jones*, 223 Ill. 2d 569, 600 (2006) (a charge is a fine, despite the legislature's label of it as a fee, if it "does not seek to compensate the state for any costs incurred as the result of prosecuting the defendant"). Although labeled as a "fee" on the trial court's order, the Children's Advocacy Center charge should be considered a fine and is eligible for an offset against defendant's credit.

¶ 108 Even though defendant has a much larger credit, he does not argue that he was assessed any other fines. As a result, we do not offset the other fees and costs assessed by the trial court order against defendant's $1,705 credit.

¶ 109 We observe that all the reductions requested by defendant were agreed to by the State. Therefore, under the authority prescribed to this court under Supreme Court Rule 615(b)(4) (Ill. S. Ct. R. 615(b)(4)), we modify the trial court fee order November 5, 2009, to reflect $305 assessed against defendant and correct the mittimus accordingly.

¶ 110                                    III. CONCLUSION

¶ 111 First, as to defendant's claim that the State failed to prove beyond a reasonable doubt that he "knowingly" caused bodily harm to James Lee, we find that a rational trier of fact could have found that defendant was consciously aware that his repeated attempts to leave the premises were practically certain to cause bodily harm to one of the store personnel.

¶ 112 Second, as to defendant's claim that the State failed to prove beyond a reasonable doubt that he "struck" James Lee "about the body," we find that the variance between the indictment and the proof at trial about the manner in which defendant caused bodily harm to Lee was not material and would not expose defendant to double jeopardy.

¶ 113 Third, as to defendant's claim that a private security officer cannot qualify as a merchant under section 12-4(b)(15), we find that a private security officer can qualify as a merchant under section 12-4(b)(15).

¶ 114 Fourth, as to defendant's claim that the State failed to prove beyond a reasonable doubt that James Lee qualifies as a "merchant," we find that a rational trier of fact could have found that Lee was an independent contractor and therefore qualifies as a merchant under section 12-4(b)(15).

¶ 115 Fifth, as to defendant's claim that the State failed to prove defendant "knew" James Lee was a merchant, we find that a rational trier of fact could have found that defendant knew Lee was a merchant based on his uniform and the assistance he offered store personnel in restraining defendant.

¶ 116 Sixth, as to defendant's claim that the indictment stated that James Lee was "an employee of Family Dollar Store" and the evidence proved that he was an employee of Metro One Security, we find that the variance between the indictment and the proof at trial about Lee's employment relationship was not material, did not mislead defendant in preparing his defense, and did not expose defendant to double jeopardy.

¶ 117 Seventh, we find that the trial court erred in assessing certain fines, fees, and costs and defendant was entitled to a monetary credit described in section 110-14 (725 ILCS 5/110-

14(a) (West 2008)). We order defendant's fines and fees reduced by $250 from $555 to $305, and order that his mittimus be corrected accordingly.

¶ 118      For the foregoing reasons, we affirm the conviction and order the mittimus corrected to reflect $305 in defendant's fines and fees.

¶ 119      Affirmed; mittimus corrected.